TOLEDO, ANN ARBOR & GRAND TRUNK RAILWAY COMPANY
v. JAMES M. DUNLAP, MARY ANN DUNLAP
AND ERVIN D. BROOKS.

*Judicial powers—Condemnation of land for railway purposes—Refusal of tender—Deposit of damages—General railroad law—Titles of statutes—Consolidation of companies—Damages —Findings of jury—Costs of proceedings.*

Strictly judicial powers can, in Michigan, be vested only in certain courts named in the Constitution.  The circuit courts, as courts, have such

powers; but the judges, out of court and merely as judges, cannot exercise them.

Proceedings to condemn lands for railroad purposes, though subject to judicial review and supervision, are not judicial proceedings and do not involve a contest on litigious rights; they are special proceedings by a temporary tribunal selected for the occasion.

In Michigan the inquiry in proceedings to condemn lands for railroads, is as to an appraisal or estimate of values and a determination of the necessity of the proposed taking for public purposes.

If, in proceedings to condemn land, a jury has been summoned under proper circumstances, has conducted its inquiries legally and with due regard to private rights, and has reached a legitimate conclusion as to the necessity for the condemnation and the compensation, the appropriation of the land on payment of such compensation, will be lawful and will not be affected by collateral action by the judge or court.

A judge cannot, by *ex parte* action, interfere, in a proceeding which is not a suit in court, with regular legal proceedings pending in the ordinary course of justice, where the parties interested have no notice beforehand, nor any regular means of relief.

The owner of lands sought for the use of a railway company cannot be compelled to determine at his peril whether a jury will regard the land as necessary for public use; he cannot, therefore, be in fault for refusing a tender for it when he can have no assurance that the proposed improvement will be sanctioned.

The statute for condemning lands for railway purposes is fatally defective in not providing a means or tribunal for determining the question of tender, which cannot be done by the judge or a jury.

The owner of lands sought by a railroad company in condemnation proceedings is not deprived of any rights by the mere deposit, pending appeal, of the sum awarded by the jury, as there is no statute requiring him to take the risk of such a deposit, or depriving him of any rights until he is paid.

An act entitled "An act to revise the laws providing for the incorporation of railroad companies, and to regulate the running and management and to fix the duties and liabilities of all railroad and other corporations owning or operating any railroad in this State" is not unconstitutional on the ground that the title provides for more than one object, its object being to bring together the legislation concerning the creation and management of railroads.

The power of a railroad company to begin proceedings for the condemnation of lands within the State is not lost by its consolidation with another railroad company into a new organization so as to con-

stitute a corporation subject to the laws of the same State as the original company.

Where a railway company seeking to condemn lands does not obtain authority from the owner in fee, it can obtain no rights of control over the land by any license or grant from the holder of a contingent dower interest or a tenant at will.

A railway track or other improvement wrongfully placed upon land by a railway company, and not abandoned to the owner of the premises, cannot be treated as a part of the realty for the purpose of increasing its value in estimating the damages due to the owner in subsequent proceedings to condemn the land for the use of the company.

A judge or circuit court commissioner "attending" a jury in proceedings to condemn lands, forms no part of the special tribunal, and his functions are at most advisory. Under the Constitution of Michigan as well as at the common law, such a jury are judges of both law and fact, and where their proceedings are not based on false principles, an appellate court will not consider questions raised on merely technical objections to the admission or rejection of testimony by them though in accordance with the magistrate's rulings.

The jury, in proceedings to condemn lands, are not bound by the testimony submitted to them, but are also expected to use their own judgment and knowledge from a view of the premises and from their own experience as freeholders.

The findings of a jury in proceedings for the condemnation of land will not be set aside unless upon objections raised in the record and unless the record shows that the proceedings were erroneous.

Where proceedings to condemn lands were affirmed so far as the findings of the jury were concerned, but beyond that were reversed, costs of the Supreme Court and of the proceedings below were allowed to the appellants.

APPEAL to the Supreme Court from the appraisal and report of a jury in proceedings to condemn lands, and from the order confirming them. Respondents appeal. Affirmed, so far as relates to the findings of the jury; reversed, as to remaining orders and proceedings.

*James M. Ashley, Jr.*, and *Aug. C. Baldwin* for petitioners, cited, in support of the constitutionality of the Railroad Law, in respect to its title: *People v. Mahaney* 13 Mich. 481; *Underwood v. McDuffee* 15 Mich. 367; *Inkster v. Carver* 16 Mich. 484; *People v. State Ins. Co.* 19 Mich. 398; *Harrington v. Wands* 23 Mich. 385; *Swartwout v.*

*Mich. Air Line R. R.* 24 Mich. 389; *Conn. Mut. Life Ins. Co. v. State Treasurer* 31 Mich. 17; *Kurtz v. People* 33 Mich. 279; *People v. Bradley* 36 Mich. 447; Cooley Const. Lim. 146; contra, *Ryerson v. Utley* 16 Mich. 269; *Stewart v. Father Matthew Society* 41 Mich. 67; *People v. Denahy* 20 Mich. 349.

*E. J. Bissell, E. H. Sellers* and *F. A. Baker* for appellants. A petition for the condemnation of land must allege the petitioner's inability to acquire title: *Chic. & Mich. L. S. R. R. v. Sanford* 23 Mich. 418; the wife of the owner in fee must be made a party: *State v. Easton &c. R. R.* 36 N. J. L. 184; contra, *Moore v. Mayor* 8 N. Y. 110; *Gwynne v. Cincinnati* 3 Ohio 24; a tenant from year to year is a party in interest: *Parks v. Boston* 15 Pick. 198; *Lawrence v. Boston* 119 Mass. 126; *North Pennsylvania R. R. v. Davis* 26 Penn. St. 238; *Turnpike v. Brosi* 22 Penn. St. 29; *Gilligan v. Providence* 11 R. I. 258; the petition must allege an attempt to agree·with each respondent: *In re Bost. Hoosac Tunnel & West. R. R.* 79 N. Y. 71; the separate proceedings against each are inadmissible in Michigan; *Grand Rapids & Lake S. R. R. v. Alley* 34 Mich. 18; *Mich. Air Line Ry. v. Barnes* 40 Mich. 383; the petitioner cannot rely on negotiations conducted by a former company with which it had been consolidated: *Harshman v. Bates County* 92 U. S. 569; *County of Bates v. Winters* 97 U. S. 83; an express finding that it is necessary to take the land for the public use is required; *Mansf. Coldw. & L. Mich. R. R. v. Clark* 23 Mich. 519; *Grand Rapids & Lake S. R. R. v. Van Driele* 24 Mich. 409; improvements made on another's land without his consent become his property, at common law, though the rule is modified where they were made in good faith: *Parsons v. Moses* 16 Ia. 444; and equity required payment for them: *Putnam v. Ritchie* 6 Paige 390; *Bright v. Boyd* 1 Story 478: 2 id. 605; Story's Eq. Jur. 779*a* 799*b*; *Green v. Biddle* 8 Wh. 77; Willard's Eq. 312; Sudg. Vend. ch. 22 §§ 54, 55, 57; the value may be set off in an action for

*mesne* profits: *Jackson v. Loomis* 4 Cow. 168; *Murray v. Gouverneur* 2 Johns. Cas. 438; *Hylton v. Brown* 2 Wash. 165; *Davis v. Smith* 5 Ga. 274; 2 Kent's Com. § 335; but in Massachusetts payment cannot be recovered for improvements made under defective condemnation proceedings: *Harris v. Marblehead* 10 Gray 44: *Crosby v. Dracut* 109 Mass. 206; *Spalding v. Chelmsford* 117 Mass. 393; good faith is essential to a recovery under betterment laws: *Horton v. Sledge* 29 Ala. 498; *Ormond v. Martin* 37 Ala. 606; *Pope v. Macon* 23 Ark. 644; *Marlow v. Adams* 24 Ark. 109; *Carpenter v. Mitchell* 29 Cal. 335; *Love v. Shartzer* 31 Cal. 495; *Carpenter v. Small* 35 Cal. 346; *Armstrong v. Jackson* 1 Blackf. 374; *Ross v. Irving* 14 Ill. 171; *Montag v. Linn* 27 Ill. 328; *Childs v. Shower* 18 Ia. 267; *Patrick v. Marshall* 2 Bibb 44; *Krause v. Means* 12 Kan. 338; *Gibson v. Hutchins* 12 La. Ann. 545; *Russell v. Blake* 2 Pick. 507; *Plimpton v. Plimpton* 12 Cush. 467; *Dothage v. Stuart* 35 Mo. 251; *Fenwick v. Gill* 38 Mo. 510; *Strike v. McDonald* 2 Harr. & Gill 191; *Madland v. Benland* 24 Minn. 379; *Withington v. Corey* 2 N. H. 118; *Bailey v. Hastings* 15 N. H. 529; *Bellows v. Copp* 20 N. H. 494; *Frear v. Hardenberg* 5 Johns. 278; *Jackson v. Loomis* 4 Cow. 172; *Woodhull v. Rosenthal* 61 N. Y. 396; *Longworth v. Wolfington* 6 Ohio 1; *Taylor v. Foster* 22 Ohio St. 267; *McCoy v. Grandy* 3 Ohio St. 463; *Morrison v. Robinson* 31 Penn. St. 456; *Nelson v. Allen* 1 Yerg. 376; *M'Kinly v. Holliday* 10 Yerg. 477; *Mathews v. Davis* 6 Humph. 324; *Saunders v. Wilson* 19 Tex. 194; *Howard v. Richeson* 13 Tex. 553; *Thouvenin v. Lea* 26 Tex. 612; *Brown v. Storm* 4 Vt. 42; *Whitney v. Richardson* 31 Vt. 306; *Thompson v. Gilman* 17 Vt. 109; *McKim v. Moody* 1 Rand. 58; *Pacquette v. Pickness* 19 Wis. 219; *Bank of Hamilton v. Dudley* 2 Pet. 526; *Society v. Wheeler* 2 Gall. 137; *Albee v. May* 2 Paine 74; where the improvements are not made in good faith they belong to the owner of the land; *Dietrich v. Murdock* 42 Mo. (1868) 279; *Miss. & Tenn. R. R. v. Devaney* 42 Miss. (1869) 555; *Graham v. Connersville etc.*

*R. R.* 36 Ind. (1871) 463; *Cal. P. R. R. v. Armstrong* 46
Cal. (1873) 85; *United States v. Land in Monterey County*
47 Cal. (1874) 515; *Emerson v. Western Union R. R.* 75
Ill. (1874) 176; *Justice v. Nesquehoning Valley R. R.* 87
Penn. St. (1878) 28.

CAMPBELL, J.   This is an appeal from proceedings to con-
demn lands.   The property involved is the same included
in the proceedings set aside at the June term, 1881, in the
case of *Dunlap v. Toledo, Ann Arbor & Northeastern Rail-
way Company* 46 Mich. 190.   The present company pur-
ports to be a consolidation of the last-named company with
the Toledo & Ann Arbor Railroad Company.

It appears that immediately after the confirmation of the
proceedings which were afterwards set aside by this court,
the company took possession of Dunlap's land and built its
road across the part sought to be condemned.   This was
done in December, 1880, and led to a series of legal contro-
versies not yet determined.

The present proceedings were begun on the 18th day of
June, 1881, by the presentation of a petition to the circuit
court for the county of Oakland, where a jury was drawn
and subsequently rendered the verdict complained of.   Dur-
ing the pendency of the proceedings and subsequently cer-
tain orders were made by the circuit court, to which reference
will be made hereafter.

Some important questions arose which require a brief pre-
liminary reference to the nature of these proceedings.   The
statute is evidently framed in accordance with the laws of
some other states where the judicial power is not parcelled
out as it is here; and some complications have been caused
by this practice which introduce difficulties.   We had occa-
sion in the case of *Michigan Air Line Railway v. Barnes*
44 Mich. 222, to point out some of these difficulties.   It is
greatly to be regretted that this species of legislation has
been so very carelessly framed.

In the present case some steps appear which could only
have been taken by a court in the regular exercise of judicial

power, while others belong to a different class of functions entirely, and are governed by different considerations.

Under our Constitution such powers as are strictly judicial in their character can only be vested in certain courts which are named in the Constitution itself. The circuit courts—as courts—have such powers. The judges, as judges, out of court, do not possess them, and cannot be vested with them.

The proceedings to condemn lands, although made under the railroad laws subject to judicial review and supervision for certain purposes, are not in themselves and never have been regarded as judicial proceedings. Our Constitution allows them to be conducted by highway commissioners in some cases, and by specially-appointed commissioners or juries of freeholders. The inquiry in this State, as elsewhere, is an appraisal or estimate of values, and not a contest on litigious rights, and includes what is not elsewhere included, an inquiry into the necessity of the proposed taking for public purposes, which was never made by courts, but always heretofore by the Legislature or some unjudicial body of its creation. Had it not been for the specific provisions in our Constitution the State could have provided for these inquiries to be made by any medium it might select. *People ex rel. Green v. Mich. Southern R. R. Co.* 3 Mich. 496. Our present system is better calculated than the old one, if fairly applied, to secure the rights of land-owners. But the nature of the proceeding remains as before, a special proceeding by a temporary tribunal selected for the occasion, and not a judicial proceeding in the ordinary sense.

As provided for under the railroad laws, there are certain proceedings in court to select a jury, and subsequent proceedings to determine whether the action of the jury should be sustained. Beyond this the courts have no part in the matter, and with the exception of some special matters to be referred to hereafter, no difficulties should have arisen to confound these functions. But it is manifest they have been confounded to some extent here, and the question may arise how far such confusion may have caused mischief which we can redress.

It may be said in brief that if a jury has been summoned under proper circumstances, has conducted its inquiries legally, and with due regard to private rights, and has reached a legitimate conclusion as to the necessity of the condemnation, and the compensation, the appropriation of the land, upon payment of that compensation, will be lawful, and will not be affected by collateral action by the judge or court, which may be unlawful. This distinction between the different tribunals is essential.

The objections taken may be divided into two classes—the one relating to the sufficiency of the condemnation, and the second to the action of the court or judge independent of the inquest. Reference will first be made to the latter.

These are—*first*, action taken by the circuit court to restrain legal proceedings; *second*, action concerning certain moneys; and *third*, action requiring the land-owner to pay costs.

On the 25th of July, 1881, the circuit judge upon an *ex parte* application, which seems to have been presented and treated as a part of this proceeding, made an order restraining a suit at law between Dunlap and several private parties as well as the railway company, for trespass,—a chancery suit involving a bill and cross-bill between the company and Dunlap, and between Dunlap and the company and two private persons, and a proceeding in favor of Erwin D. Brooks before a circuit court commissioner for forcible entry and detainer. The same order authorized the company to draw certain money from a bank, in which we do not see that appellants here had any special concern.

Without stopping to consider the very serious question whether a judge can be authorized, in a proceeding which is not a suit in court, to interfere with regular legal proceedings pending in the ordinary course of justice, it is sufficient to say that *ex parte* action for that purpose, where the parties interested have neither notice beforehand nor any regular means of relief against it, cannot be sustained on any principle whatever. We do not think any such summary and illegal proceeding was intended by the Legislature. It

is very questionable how far the statute contemplates any such interference except through the medium of a distinct legal proceeding, but it does not authorize any action except by the court, and it could not lawfully authorize it without a hearing, and was not intended to do so.

Upon the matter of costs there is also reason to regard it as a serious question whether—inasmuch as the necessity of taking as well as the amount of compensation must be determined before land can be taken—a land-owner can under any circumstances be compelled to lose his land without full compensation.   He cannot be compelled to determine at his peril whether a jury will regard the land as necessary for public use, and he cannot be in fault for refusing a tender when he can have no assurance that the proposed improvement will be sanctioned.   But the statute is fatally defective, if such an infliction could be imposed, because it provides no means and no tribunal for determining the question of tender.   It is not within the constitutional functions of the jury, and the judge, whether present or absent, cannot pass upon such a fact himself, and bind the party by it.   The law has provided no method of inquiry for deciding this question legally.

In regard to the deposite of money in bank, the statute has no provision which would compel the land-owner to take the risk of any such deposit, or deprive him of his rights until he is paid.   We do not regard him therefore as injured by the mere deposite of the money.

The remaining questions relate to the action of the jury and the orders which provided for their appointment.

It is claimed that there is no authority to take such steps in favor of a consolidated company, consisting in part of a foreign corporation, and that the railroad law itself is invalid for a defective title.

The act is entitled "An act to revise the laws providing for the incorporation of railroad companies, and to regulate the running and management, and to fix the duties and liabilities of all railroad and other corporations owning or operating any railroad in this State."

It does not appear to us that this title covers more than one object. It is to bring together the legislation concerning the creation and management of railroads. It may be that there are some roads which are exempt from more or less of its provisions, and that as to them it could not be enforced. But this would be for other reasons, and not because the title is double.

Neither do we think the consolidation presents any difficulty. The new organization, as such, is undoubtedly a Michigan corporation. How far as such it could act abroad does not matter here. It possesses the powers belonging to that particular corporation which had authority before the union to institute proceedings to reach this particular land, and this is all that is now under inquiry. We have no occasion to look further.

It also appears that James M. Dunlap is the owner in fee of the lands sought to be taken, and that the rights of the other parties are a contingent dower interest, and a tenancy at will. Without obtaining Dunlap's authority the company could have had no rights of control over the land by any license or grant from the rest. This being so, a failure to agree with him was as complete a bar to possession and enjoyment for their railroad, as a refusal of all three to agree. The statute contemplates that these proceedings may be had if the land cannot be obtained by treaty, and here it was shown it could not be.

We are of opinion that no error was committed in excluding from the compensation allowed to Dunlap the value of the railroad track laid upon the land. We think the case cannot be distinguished from *Morgan's Appeal* 39 Mich. 675. The railroad company, whether rightfully or wrongfully, laid this track while in possession and for purposes entirely distinct from any use of the land as an isolated parcel. It would be absurd to apply to land so used, and to a railway track laid on it, the technical rules which apply in some other cases to structures inseparably attached to the freehold. Whatever rule might apply in case of abandonment, it is clear that this superstructure was never designed

47 MICH.—30

to be incorporated with the soil except for purposes attending the possession; and in a proceeding to obtain a legal and permanent right to occupy the land for this very purpose, there would be no sense in compelling them to buy their own property. Whatever right of redress, if any, Dunlap may have for the tortious occupancy previous to these proceedings, or whatever right of property he might have in case the company abandoned the road entirely and left the track untouched, we think that so long as it is in possession and legal measures are proceeding to secure a right to retain it there, this structure belongs to the company, whether intruders or not.

The remaining errors assigned refer to various rulings and testimony bearing upon the question of public necessity. Some of them have been raised on what is a mistaken notion of the character of these proceedings. The circuit judge attended the sittings of the jury, and admitted or excluded testimony, and charged the jury precisely as on a trial.

The judge formed no part of this special tribunal. The statute indeed allows the judge to " attend said jury, to decide questions of law and administer oaths to witnesses." § 21, art. 2. But the same statute which allows this allows him to designate a circuit court commissioner for the same purpose, and also allows the jury to proceed without either. Whatever the language of this statute literally construed may mean, it is very clear that any such functions must at most be advisory. The jury will undoubtedly be regarded as accepting and doing what they permit to be done. But in all such cases the Constitution as well as the principles of the common law, makes them judges of law and fact. *Chamberlin v. Brown* 2 Doug. (Mich.) 120. Their conclusions are not based entirely on testimony. They are expected to use their own judgment and knowledge from a view of the premises, and their experience as freeholders, quite as much as the testimony of witnesses to matters of opinion. And while an appellate court is bound in such cases to set aside proceedings which appear to be based on false principles, it cannot properly deal with rulings as if they were excepted

to on a common law trial or dispose of the controversy on merely technical notions. *Chamberlin v. Brown* 2 Doug. 120; *Michigan Air-line R. R. Co. v. Barnes* 44 Mich. 222.

In the case before us the jury have in proper form decided the improvement to be one of public necessity. They had a considerable amount of testimony before them bearing on that question, and it was strongly contested. While the language of the charge of the judge is certainly ambiguous and open to criticism, yet it appears distinctly that the jury regarded not merely the necessity of the land if the road should be laid out, but also the importance of the road itself. We cannot say from an inspection of the record that there is any prevailing reason for holding that the jury were misled in their conclusions.

Neither do we discover any sufficient reason for holding there has been anything out of the way in the estimate of damages. There is some ground for questioning their entire adequacy, but the jury saw the land and heard the witnesses; and as the case stands we cannot disturb their finding on this point. That objection is not raised on the record, and does not appear to have come up at all except as to the materials of the superstructure.

There is nothing however in the record which in our opinion entitled the company to costs, and we think costs should be awarded to Dunlap. The proceedings below so far as they relate to the findings of the jury must be affirmed. The remaining orders and proceedings are unauthorized and must be reversed, with costs of this court and of the proceedings below to the appellant Dunlap.

The other Justices concurred.