[Filed February 19, 1887.]

# OREGON RAILWAY AND NAVIGATION CO. *v.* J. H. MOSIER ET AL.

RAILROAD CORPORATION—RIGHT OF WAY—MEASURE OF DAMAGES.—Where the plaintiff, a railroad corporation, having obtained a right of way for its railroad over the land in controversy from the person in possession, and supposing him to be the owner, entered upon the land and constructed its road thereon; afterwards, in an action under the statute against the true owner to condemn said lands, the defendant is not entitled to have the value of the railroad improvements considered in assessing the damages.

SAME—FIXTURES.—The old rule that all things annexed to the realty become part of it, has been greatly relaxed in modern times for the encouragement of trade, manufactures and transportation.

WASCO COUNTY. Plaintiff appeals. Reversed and new trial ordered.

*Rufus Mallory*, for Appellant.

*A. S. Bennett*, for Respondent.

LORD, C. J.—This was a proceeding in pursuance of the statute to condemn certain lands described in the complaint for a right of way for a railroad, and for grounds for a depot, water station, etc. The plaintiff entered and constructed its road and buildings on the land in 1881, and has since continued in the use thereof. Prior to such entry, the plaintiff had bought and paid therefor to the defendant, J. H. Mosier, who was in possession and claimed to be the owner of the land, a right of way, and received from him and his wife a deed therefor, and in pursuance of the same entered upon said land and constructed its said railroad; that the defendant, Lydia S. Mosier, during this time, was not within the state, and had no other tenant or person in possession of her interest in said land than her father, the said J. H. Mosier; and that she owns a one-seventh interest in the land sought to be appropriated, and to condemn which the proceedings were instituted.

Without further detail, it is sufficient to say that the several assignments of error relate to the rejection of certain evidence,

the giving of certain instructions, and the refusal to give certain others requested; all of which raise but a single question, and that is, whether the defendants are entitled to have the value of these railroad improvements included in assessing the damages. The theory upon which the court below proceeded was, that the plaintiff, having entered upon the land without the consent of the owner, and without having instituted the necessary proceedings required by statute for the ascertainment of damages or compensation to which the defendant was entitled, and the payment of the same, was a trespasser; and that the rails, ties, and other structures which the plaintiff had affixed to the lands in the mode ordinarily done for railroad purposes, became a part of the freehold, and vested in the proprietor of the soil. It is evident from the language of the instructions, that the court applied the common law maxim, *quicquid plantatur solo, solo cedit*, with ancient rigor and strictness, and regarded the fact of attachment to the soil of structures as decisive of their character as fixtures, and the right of the owner of the land to them.

The old rule, that all things annexed to the realty become a part of it, has been much relaxed, and several exceptions recognized; as where the intention is manifest to use the alleged fixtures in some employment distinct from the use of the soil or husbandry, or where the chattel has been affixed for the purposes of trade or the mechanical arts. In modern times, for the encouragement of trade, manufactories and transportation, and owing no doubt in part to the increased value and importance of personal property, many things are now considered as personalty which are attached to the soil. The necessities and convenience of an advancing civilization have demanded a relaxation of the strict rule, so that now attachment to the soil is only one of several conditions to help in determining whether a given thing belongs to the realty. The books indicate that various considerations have been applied by the courts in the determination of this question; and that few decisions, although involving fixtures of a similar character, can be considered of absolute authority for its disposition; but that

in the nature of things every case must depend more or less upon its own special facts and peculiar circumstances. (Schouler on Personal Property, Sec. 117.)

In *Railroad Co.* v. *Deal*, 90 N. C. 111, the exceptions to the general rule and the reasons for them are clearly and distinctly stated by Merriman, J. He said : " The general rule of law is that buildings and other structures erected on land for the better enjoyment of it become identified with, part of, and go with the land, and the tenant has no right at any time to remove them. Anciently, the law was more strict in respect to making things erected upon and attached to the land, directly or indirectly, a part of the freehold, than in modern times. As civilization has advanced and trade and the mechanic arts and other industries have multiplied and increased in development, and correspondingly in their necessities and wants of reasonable convenience, there has been a growing relaxation of the strict rules of law mentioned in their favor. It is the policy of the law to encourage trade, manufactories and transportation, by affording them all reasonable facilities. Buildings, fixtures, machinery and all such things certainly intended and calculated to promote them, are treated, not as a part of the land but as distinct from it, belonging to the tenant, to be disposed of or removed at his will and pleasure. Hence, if a house or other structure is erected upon land only for the exercise of trade, or for the mixed purposes of trade and agriculture, no matter how it may be attached to it, it belongs to the tenant, and may be removed by him during his term, and in some classes of cases, after it is ended ; though the tenant after his term is over would, in going back upon the land to get his property, be guilty of a trespass, and except in that respect the property would remain his. The exceptions to the general rule pointed out above are well settled, and the practical difficulty in any case arises in pointing out when the general rule or exception applies. The exception does not depend on the character of the structure or the thing erected, or whether it is built of one material or another, or whether it be set in the earth or upon it; but whether it is for the purposes of trade or

manufacture, and not intended to become identified with and part of the land." (*Railway Co.* v. *Canton Co.*, 30 Md. 352; *Van Ness* v. *Pacard*, 2 Pet. 137; *Central Branch R. R.* v. *Fritz*, 20 Kan. 434; *Moore* v. *Valentine*, 77 N. C. 188; *Pemberton* v. *King*, 2 Dev. 376; Taylor on L. & T., Secs. 544–546; Schouler on Personal Property, Secs. 114–118.)

The right of the state to take private property for public uses, and the delegation of such right to a corporation, subject only to the constitutional limitation that just compensation shall be made, is not questioned. Under our statute, the plaintiff, as such corporation, is authorized and empowered to acquire land for railroad purposes by agreement with the owner, or, failing to agree, by appropriate proceedings for its condemnation. The mode to be pursued, how and when payment is to be made, and the rights of each party, are distinctly defined, protected and secured under its provisions. In one way or the other the law must be complied with, to make a valid acquisition of the right of way over the lands. If the corporation enters upon the land and appropriates it without the consent of the owner, or proper proceedings for ascertaining the compensation and making payment of the same, it renders itself liable to an action of trespass or ejectment, or to be enjoined in equity until compensation is ascertained and paid. (Pierce, Railroads, 167, and notes.) Still, it is the right of the plaintiff to acquire the land for its road — it is clothed with the power of the state for that purpose, and the use to which it is sought to appropriate it is public and not private.

In view of the rights thus delegated by the state to the corporation, the purposes for which they were conferred, the public use for which the land is condemned, the just compensation required to be paid for its appropriation, and the great interest the public has in the successful operation of the road, it seems to us that these are elements which plainly distinguish the acts of a corporation, although technically a trespasser, in building its road upon land without proper authority therefor, from the acts of a common trespasser in affixing chattels to the freehold, and to render inapplicable the strict rule of law which

would treat such improvements as fixtures and part of the realty, or to require the law to be administered upon the just and liberal principles of the exceptions to that rule which would record such improvements as personalty, and exclude them in computing the value of the land.

This distinction, and its application to the facts here, have been thus clearly stated by Bicknell, C. J. : " The duty rested upon the appellee, before the taking and appropriation of the lands, to have caused in the appointed mode an ascertainment of the compensation to which the owner was entitled, and to have made payment of the compensation. Neglecting this duty, the entry upon and possession of the lands was wrongful; no title to them was acquired, and the title of the owner was not divested. The neglect of the duty, the wrongful entry and possession, does not preclude the appellee from resorting subsequently to appropriate proceedings for the acquisition of the lands, and, of consequence, availing itself of all the structures it may have placed thereon. (*Justice* v. *N. V. R. R. Co.*, 87 Pa. St. 28; *Secombe* v. *R. R. Co.*, 23 Wall. 108.) Though the appellee was a trespasser by reason of the neglect to pursue the proper remedy for acquiring the lands—acquiring them without the consent of the owner—there is in the right continuing in him to pursue the remedy, rendering the possession rightful, and by which the title may be acquired, a plain distinction between the appellee and a common trespasser. As against such trespasser the proprietor can keep the lands, and keeping them, hold the improvements he may have annexed to the soil. No remedy is given the trespasser by which he may acquire the use and enjoyment of or title to the lands. There is also another distinguishing fact : the structures of the appellee were dedicated, not to the use and enjoyment of the freeholder, but to public uses, which are the consideration for the grant to the appellee for the corporate franchise, and of the right, in the exercise of these franchises, to take and appropriate private property. These elements of the case distinguish it from that of the trespasser entering upon lands, fixing chattels to the freehold for its use and enjoyment, which he must

intend to convert into realty, and which, following the title to the soil as one of its incidents, pass to the proprietor." (*Jones v. N. O. & S. R. R. Co.*, 70 Ala. 232.)

Equally to the point is the language of Agnew, J. : "This is not a case," said he, "of mere trespass by one having no authority to enter, but of one representing the state herself, clothed with the power of eminent domain, having a right to enter and place these materials on the land taken for public use—materials essential to the very purpose which the state has declared in the grant of the charter. It is true, the entry was a trespass by reason of the omission to do an act required for the security of the citizen, to wit, to make compensation or to give security for it. For this injury the citizen is entitled to redress. But his redress cannot extend beyond his injury. It cannot extend to taking the personal chattels of the railroad company. They are not his, and cannot increase his remedy. The injury was to what the landholder had himself, not what he had not. Then why should the materials laid down for the benefit of the public be treated as dedicated to him? In the case of a common trespasser, the owner of the land may take and keep his structures, *nolens volens ;* but not so in this case, for though the original entry was a trespass, it is well settled that the company can proceed in due course of law to appropriate the land, and consequently to reclaim and avail itself of the structures laid thereon." (*Justice v. Railway Co.*, 87 Pa. St. 28 ; see also *Toledo &c. R. R. Co. v. Dunlap*, 47 Mich. 456 ; *Morgan's Appeal*, 39 Mich. 675 ; *Lyon v. Railway Co.*, 42 Wis. 538 ; *Daniels v. Railway Co.*, 41 Iowa, 52.)

The object of the proceeding is to award just compensation to the owner of the land. Improvements made by the corporation and for the use of the road and necessary for its successful operation, constitute no part of the damage or value of the land. The just compensation is for the injury which he may sustain for the taking of the land. "When this is afforded, the purposes of right and the constitution are satisfied. It is not intended that compenastion shall extend beyond the loss

and injury, including that which the land owner had not when the property was taken, but which is an incident of the appropriation, and essential to the uses for which the law confers the right of taking the property." (*Jones* v. *Railway Company, supra; R. C. Co.* v. *Booraem,* 28 N. J. Eq. 450.) The judgment must be reversed and a new trial ordered.