## WESTERN UNION TEL. CO. v. PENNSYLVANIA CO.

### (Circuit Court, W. D. Pennsylvania. October 6, 1903.)

### No. 46.

**1. TELEGRAPHS—CONTRACTS BETWEEN RAILROAD AND TELEGRAPH COMPANIES —CONSTRUCTION.**

An executory contract between a telegraph company and a railroad company for the construction and operation of a telegraph line on the right of way of the railroad company, to be used for its benefit in the transaction of railroad business, and for the benefit of the telegraph company in the transmission of commercial messages, which provided that the poles and cross-arms for the original construction should be

furnished and placed by the railroad company, and expressly gave the telegraph company the right to string a second wire thereon, did not operate as a conveyance to the telegraph company of any estate or interest in the realty, in the absence of any words of grant therein, but created a relation of joint ownership and interest between the parties in the personalty used in constructing the line, subject to the terms of the agreement.

**2. SAME—RIGHT OF TERMINATION.**

A contract between a telegraph company and a railroad company for the joint construction and use of a telegraph line along the latter's road, which fixes no time for its expiration, is not perpetual in its operation, but is terminable at the option of either party on reasonable notice.

In Equity. On demurrer to bill.

Rush Taggart and A. M. Neeper, for complainant.
Dalzell, Scott & Gordon, for defendant.

BUFFINGTON, District Judge. This is a demurrer to a bill in equity filed by the Western Union Telegraph Company against the Pennsylvania Company, lessee of the Cleveland & Pittsburg Railroad Company. The bill is based upon an agreement entered into in October, 1856, between the Western Union Telegraph Company and the Cleveland & Pittsburg Railroad Company; and the rights of the complainant herein considered arise under that contract, and an alleged subsequent parol modification thereof. On June 2, 1902, the Pennsylvania Company, the successor of the Cleveland & Pittsburg Railroad Company, notified the telegraph company it would terminate such contract in one year thereafter, whereupon the latter filed this bill to compel specific performance, and to enjoin respondent from terminating the contract. The respondent has demurred, and the questions involved in such demurrer which are herein considered are, first, whether this agreement conveyed to complainant an easement or grant of real estate in perpetuity; and, secondly, whether the contract is terminable by the railroad on reasonable notice. In view of the case of The Western Union Telegraph Company v. The Pennsylvania Railroad Company (C. C.) 120 Fed. 362, and the affirmance thereof by the United States Circuit Court of Appeals (123 Fed. 33), it is not necessary to here consider any right claimed by the bill to vest in the complainant by virtue of the act of Congress of July 24, 1866 (14 Stat. 221, c. 230). The case turns on the agreement of 1856, and the meaning and construction of such contract are referable to its date of execution. If the writing then vested no interest in realty, the actions of the parties since have not enlarged its scope, for both have acted and are now acting under it, and their existing rights and status are derived therefrom. The property here involved is situate in Ohio and Pennsylvania, and in these states a grant of realty, by their statutes of fraud, must be in writing. The common-law requirement in a conveyance of real estate is that it shall contain apt words of conveyance, or manifest a clear intent by other terms. Examination shows that this writing contains no apt words of conveyance, nor evidences an intent to convey. Its form is not that of a conveyance. It styles itself not by the title given to a conveyance, viz., "lease," "indenture," or "deed," but by that of "agreement" or "contract"; and, while it is a

mere formal matter, it will be noted the grantor of the alleged realty is made the party of the second part, and the grantee, of the first part. Moreover, if this paper is to be regarded as a conveyance, and its effect is to create a perpetual servitude and easement on the property of the railroad, and to bind the telegraph company, in perpetuity, to operating and exercising such easement, then these broad powers and obligations are irrevocably granted and assumed in perpetuity by these respective corporations, without recital of any statutory authority thereto enabling them, or, if such powers are presumed, no corporate action authorizing their exercise by the executive officers is recited. The paper simply shows exercise of power by the executive officers, without reciting enabling statutory authority or corporate action. Presumably, this agreement was made between parties familiar with the forms and requirements of conveyance and due corporate action. It was between companies engaged in large affairs. They knew what each meant to grant and acquire. The omission, then, from this contract of all form, words, and terms incident to a conveyance of realty, and of reference to authority to exercise the broad powers now imputed to this writing, is most significant. If the parties intended to convey and grant, presumably they knew how to express such interest in fitting terms. But if the instrument was capable of such construction as to make it a conveyance, it must be conceded it would be a strained one, and therefore one to be resorted to only in case it is not susceptible of a single, natural construction. But this we think it is. The paper was executory. No present consideration passed. The purpose was to establish a relationship between the parties covering telegraph appliances and facilities thereafter to be constructed, to provide for their repair and extension, and to regulate their use in the transmission of railroad business for the benefit of the railroad, and of commercial business for the benefit of the telegraph company. Such agreements have been held to create joint enterprises and ownerships. St. Paul, etc., Co. v. Western Union Telegraph Company, 118 Fed. 511, 55 C. C. A. 263; Western Union Telegraph Company v. Burlington, etc., R. Co. (C. C.) 11 Fed. 1; Atlantic & Pacific Tel. Co. v. Union Pacific Railroad Co. (C. C.) 1 McCrary, 541, 1 Fed. 745. By it the railroad was to secure telegraphic services in conducting its business, and the telegraph company was to have the use of railroad property, and the facilities to carry on a general commercial telegraphic business. In the original installation the railroad was to furnish in place poles and cross-arms; the telegraph company to furnish wire, insulators, instruments, and patents, and string one wire. For stringing this wire the railroad was to pay $30 per mile. Certainly, by this original installation of poles, cross-arms, and wires thus made or paid for by the railroad company, and located on its own ground, it cannot be said that the telegraph company acquired any title to the land to which these fixtures were attached. For aught that appears in the contract, the telegraph company had no express right of entry to these poles or wires. The duty of keeping the line in order rested upon the railroad, and under the parol modification the telegraph company simply furnished material, while the railroad did the work. Under a working contract for such a joint undertaking, it is clear that

no easement or grant of any interest in realty was contemplated or required. It is true, the telegraph company had the right to string another wire for its own use; but this, it will be observed, was on the poles of the railroad, and such right, when exercised, was not incident to ownership created or vested, but because the contract expressly allowed it. Indeed, the express grant of such right by section 5 implies that, in the scrivener's view, such grant was essential to the exercise of that which would have been an incident of ownership, if the telegraph company, by the agreement as a whole, was vested with a line easement. The eighth clause provides that the railroad company was not to allow any other telegraph line or individual to build or operate a line of telegraph on or along the said railroad, or any part thereof. Such a provision was held, in the case of The Pacific Company v. Western Union Telegraph Company (C. C.) 50 Fed. 494, incompatible with the contention that the contract conveyed a right to the real estate, because it amounts to an assertion by the railroad company of a right to control the future use of the ground. That the material furnished by the telegraph company went into the construction of lines does not of itself make them or it realty. Much less does it draw to such personalty ownership of the particular ground on which they are placed. It must be borne in mind that they are so placed under the contract, and if the contention of the parties, evidenced by that contract, was that they were not to be considered realty, they will be treated as personalty. Whether fixtures such as poles, wires, and rails lose their character as personalty depends in a great measure upon whether the one who placed them on another's ground intended such a result. St. Paul, etc., Co. v. Western Union Telegraph Company, 118 Fed. 513, 55 C. C. A. 263; Wiggins Ferry Co. v. Ohio, etc., R. Co., 142 U. S. 409, 12 Sup. Ct. 188, 35 L. Ed. 1055; Van Ness v. Pacard, 2 Pet. 137, 7 L. Ed. 374; Wagner v. Cleveland, etc., R. Co., 22 Ohio St. 563, 10 Am. Rep. 770; Northern Central R. Co. v. Canton Co., 30 Md. 347; Toledo R. Co. v. Dunlap, 47 Mich. 456, 11 N. W. 271; Oregon Co. v. Mosier, 14 Or. 522, 13 Pac. 300, 58 Am. Rep. 321; Western Union Co. v. Burlington (C. C.) 11 Fed. 1; Tifft v. Horton, 53 N. Y. 380, 13 Am. Rep. 537. To these may be added Apsden v. Austin, 5 A. & Ellis (N. S.) 671, where the court said:

"It is possible that each party to the present instrument may have contracted on the supposition that the business would be carried on, and the service in fact continued, during the three years, and yet, neither party might have been willing to bind himself to that effect; and it is one thing for the court to effectuate the intention of the parties to the extent to which they may have even imperfectly expressed themselves, and another to add to the instruments all such covenants as upon a full consideration the court may deem fitting for completing the intention of the parties, but which they either purposely or unintentionally have omitted. The former is but the application of a rule of construction to that which is written. The latter adds to the obligations by which the parties have bound themselves, and is, of course, quite unauthorized, as well as liable to great practical injustice in the application."

The agreement then being one for the furtherance of a joint enterprise, and not for the grant of an interest or easement in realty, we are of opinion it was terminable at the option of either party on reasonable notice. No time was specified for its continuance, but clearly, under

the terms of this contract, its subject-matter, and the objects in view, the failure to specify any time could not imply that this agreement was for all time. As is the case in many joint enterprises without time limit, the parties probably assumed the success of the enterprise and benefits accruing therefrom to the parties afforded a guaranty of indefinite continuance. The outcome justified such belief, for this contract, without provision for continuance, has, through the advantages accruing to both parties, worked its own extension for nearly 50 years. The view that the contract, being without limit, was terminable, is in accord with the authorities. Echols v. New Orleans R. Co., 52 Miss. 610, was a contract for cord wood to be furnished without limit of time, save that it was to "continue as long as satisfaction be given by the contractors." It was held terminable on reasonable notice, although there was no default of the contractors, the court saying:

"Perpetual contracts of this character will not be tolerated by the law, or, rather, will not be enforced as imposing an eternal and never-ending burden. An agreement to furnish a support or service or a particular commodity at a specified price, or to do a certain thing without specification as to time, will be construed either as terminable at pleasure, or as implying that the thing to be done shall be implied within a reasonable time, and the obligations shall cease with the same limitation. Any other theory than this would subject incautious persons—a class, it may be remarked, which includes the majority of mankind—into lifelong servitudes, and greatly fetter and embarrass the commerce of the world. Indeed, it may be said that any other theory is a moral and practical impossibility, and, if indulged in by the courts, could not be enforced in the ordinary concerns of life."

In Jones v. Newport News Co., 65 Fed. 736, 13 C. C. A. 95, a coal tipple and trestle were constructed by a warehouseman under an agreement with the railroad that it would construct a switch thereon and deliver coal to him. There was no agreement as to time. It was held the railroad company could terminate the switch right, the court saying:

"It is not alleged that either the defendant or his predecessor agreed to keep the switch in the main line for any definite time, or that either expressly agreed to keep it there forever. The plaintiff contends that, nothing having been said as to time, the implication is that the switch was to be maintained at all times; i. e., forever. Such a construction is quite at variance with the views of the Supreme Court, as expressed in Texas & P. Railroad Co. v. City of Marshall, 136 U. S. 393 [10 Sup. Ct. 846, 34 L. Ed. 385]."

In the case of The B. & O. R. R. Co. v. The Ohio Company, referred to in the case of The Chattanooga Co. v. Cincinnati Co. (C. C.) 44 Fed. 456, it was held that though there was a grant by the Ohio & Miss. Ry. Co. that the B. & O. R. R. Co. "shall have the exclusive right to forward express matter over the said railroad of the party of the second part," and the latter company had established and opened offices all along the line of the railroad of the Ohio & Mississippi Company, and had acted under a contract for some years, it was nevertheless terminable by the Ohio & Mississippi Company. Coffin v. Landis, 46 Pa. 432, was an agreement without specification of time continuance. This the court refused to regard as perpetual, saying:

"It is evident, then, that were we so to construe the agreement as to hold obligatory upon the one party to employ, and upon the other party to serve,

during any period, we should be in danger of imposing liabilities which both parties purposely avoided assuming. And if it be admitted that neither of the parties contemplated a severance of the relation formed by the contract, at the will of the other party, it does not follow that we are at liberty to treat the agreement as containing a covenant against it. That would be to make an expectation of results equivalent to a binding engagement that they should follow."

Without discussing at length cases cited by counsel for the telegraph company, of which the Mississippi Logging Co. v. Robson, 69 Fed. 775, 16 C. C. A. 400, Great Northern Ry. Co. v. Manchester, S. & L. Ry. Co., 5 De Gex & S. Ch. Rep. 138, and Llanelly Ry. Co. v. London & Northwestern Ry. Co., 7 H. L. 550, are examples, it will be observed that present and valuable considerations in each case, on the execution of the several agreements, passed to the party that afterwards sought to terminate. Moreover, in considering the English cases, regard must be had to the statutory right of the railroad, by appropriate proceedings, to compel a running arrangement of the general nature provided by the agreement. Holding the agreement nonterminable was therefore, in effect, but giving the railroad what it could secure by statutory proceedings.

After full consideration, we are of opinion the present agreement conveyed no interest or easement in realty, and that it was terminable on reasonable notice, for which latter conclusion we find support in Texas, etc., Ry. Co. v. City of Marshall, 136 U. S. 407, 10 Sup. Ct. 846, 34 L. Ed. 385. We are also of opinion the relation between the parties was one of joint ownership and interest in the personalty subject to this particular agreement, but the extent of that ownership or interest is not here involved or determined.

Our view of both the two questions noted in the early part of this opinion being with the respondent, a decree sustaining the demurrer to that extent may be drawn.