Richard **IRWIN**, Appellant,

v.

**Carland E. SMITH and Viersen Land &
Royalty Co., a corporation,**
Appellees.

No. 47063.

Court of Appeals of Oklahoma,
Division No. 1.

Feb. 4, 1975.

Rehearing Denied April 1, 1975.
Certiorari Denied May 13, 1975.
Released for Publication by Order of Court
of Appeals May 15, 1975.

Erwin & Butts, Chandler, for appellant.

Boatman & Laub, Okmulgee, for appellees.

BOX, Judge:

An appeal by Richard Irwin, plaintiff in the trial court, from the sustaining of a demurrer to plaintiff's evidence and denying of temporary injunction.

In the early 1900's the St. Louis and San Francisco Railroad built, as a part of its regular line, a railroad between Okmulgee, Oklahoma and Muskogee, Oklahoma. The line was built on easement or right-of-way property rather than fee property. The land here involved was acquired under the Congressional Act of February 28, 1902, 32 Stat. 43 (Enid-Anadarko Act), which provides that when the railroad ceased to use any portion of the right-of-way for railroad purposes, such portion would thereupon revert. On April 9, 1973, the railroad entered into a contract with L. B. Foster Company, selling to L. B. Foster Company certain portions of its line which it had been authorized by The Interstate Commerce Commission to discontinue. Said contract provided, in part, as follows:

" . . . seller does by these presents, sell and convey unto buyer all personal property owned by seller on its right of way as described in the recitals above and as shown generally on said print, and not otherwise, between

\* \* \* \* \* \*

"(2) Okmulgee, Okla. and Muskogee, Okla.

\* \* \* \* \* \*

"a total of approximately 104.7 miles, including, but not by way of limitation, the entire line of railroad, and all rails and switches, ties, bridges and appurtenant facilities located on said right of way, . . . ."

Thereafter L. B. Foster Company sold the timber railroad bridges in place, located on this portion of the railroad, to Brewer and McMichael, Inc. of Holdenville, Oklahoma.

Thereafter and on September 24, 1973, Brewer & McMichael, Inc. sold the railroad bridges, ballast and culverts on the 32

mile Frisco Railroad track located between Okmulgee and Muskogee, Oklahoma, to the plaintiff, Richard Irwin. The 32 miles between Okmulgee and Muskogee comprises an integral part of the railroad's overall system.

Plaintiff sold some of the ballast gravel in place to Okmulgee County and the County commenced loading the gravel or ballast when they were stopped by Carland Smith, co-defendant. Smith advised the plaintiff that he would not be permitted to take the gravel and ballast; thereafter Smith installed a fence or a gate and put a chain lock on it at the point where plaintiff was entering his property.

Defendant Carland Smith is a practicing attorney in Okmulgee and approximately a half mile of this line crosses property owned by Smith. After Smith blocked the plaintiff's ingress and egress, plaintiff brought this action for temporary injunction.

To plaintiff's petition for a temporary injunction, defendants filed their answer alleging among other matters, the following:

"That upon the said abandonment of said right-of-way the railroad company and/or its assigns removed from the lands here involved all rails and ties and other removable property belonging to the railroad. Thereafter the Plaintiff and/or his agents, without permission or notice to the Defendants, entered upon Defendants' said lands and began excavating, loading up and hauling away large portions of Defendants' said land, namely, crushed rock or broken stone, gravel and other land substances. Defendants admit that upon learning of Plaintiff's acts last above referred to that the Defendants did order Plaintiff to discontinue removing Defendants' said land substances, and Defendants thereafter did place a fence and lock near the Eastern part of said right-of-way upon the lands here involved."

Defendants further filed with their answer a cross-petition seeking damages against the plaintiff, seeking money damages for land substances which had been previously removed by plaintiff of the reasonable market value of $900.00, seeking further damages in the amount of $200.00 for damages to the land by reason of said removal and an attorney's fee of $750.00 and costs.

The court, after hearing the evidence of plaintiff and viewing the property, sustained defendants' demurrer and denied plaintiff a temporary injunction.

The court's finding reads as follows:

"1. That the ballast and wooden bridge on the former right-of-way of St. Louis and San Francisco Railroad Company as they involve defendants' property have become and are an integral part of the land, are affixed thereto, and that they are not the property of the plaintiff.

"2. It is the further finding and order of the court that defendants' demurrer to the petition of the plaintiff insofar as it pertains to the temporary restraining order and the testimony thereon should be and is hereby sustained, to which ruling of the court plaintiff excepts, and exception is allowed."

Plaintiff appeals, asserting that "the finding and holding of the trial court is not sustained by the evidence and is contrary to law."

Defendants contend that the refusal to grant a temporary injunction is largely in the judicial discretion of the trial court, and upon appeal the Supreme Court will not interfere with the order of the trial court unless there is a clear showing of error or abuse of discretion. Cherry v. Sharp, 172 Okl. 241, 45 P.2d 70, and other cases.

We would agree with defendants' contentions regarding the court's denial of a temporary injunction, but as shown by the Journal Entry of the court, supra, the court made a legal ruling regarding the ballast and wooden bridge, which for all practical purposes amounted to a directed

verdict for defendants on their cross petition. Thus, we must review said legal ruling for its correctness.

The evidence regarding the ballast was adduced as follows: Plaintiff testified that the railroad on the land in question had been constructed by putting up a grade out of dirt and then on top of that there was river gravel and then on top of the river gravel there was picher mine chat. In addition there are rails, ties and fasteners.

The ballast is the rock and chat that stabilizes the róad bed and helps drain water away from the ties so they won't rot so quickly. The road is constructed by first doing the grading and then the ties are laid and then the rails are laid on top of the ties and then the ballast is brought in and dumped out of the bottom of dump cars with the first layer being river gravel and the second layer being picher mine chat.

Plaintiff testified that the dunnage involved herein on defendant Smith's land was river gravel hauled in from some place else because there was no river gravel available thereon and that the picher mine chat comes from the Eagle-Picher mines at Picher, Oklahoma in the northeastern part of the state. There is one bridge timber trestle which crosses a small creek, and is involved in the instant case.

Plaintiff further testified that the process used in removing the ballast was first with a front-end loader to pick up the picher mine chat, then with a motor grader the native gravel was winrowed and picked up. It is not necessary for the plaintiff to get off of the railroad right-of-way to accomplish this work and the removal of the ballast in no way diminishes its salvage value.

Plaintiff testified that he had been involved in the railroad salvage business for about 11 years and had salvaged railroads in the State of Oklahoma before; that he was aware of salvage customs insofar as bridges and ballast was concerned and it was considered a salvageable item in the business and he had salvaged the same before. The ballast is removed without removing dirt insofar as possible and there is a small amount of dirt intermingled with the ballast.

In the early United States Supreme Court case of Wiggins Ferry Company v. Ohio and Mississippi Railway Company (1892), 142 U.S. 396, 12 S.Ct. 188, 35 L.Ed. 1055, which was a case involving, among other things, removal of railroad rails by receiver, which was claimed wrongful. The court stated at page 416, at page 194 of 12 S.Ct., at page 1063 of the opinion in 35 L.Ed. as follows:

" . . . . In Van Ness v. Pacard, 27 U.S. [137] 2 Pet. 137 [7 L.Ed. 374], it was held that a house built by tenant upon land, primarily for the purpose of a dairy, and incidentally for a dwelling house for the family, did not pass with the land. The early authorities are reviewed in that case by Mr. Justice Story, and the conclusion reached, that whatever is affixed to the land by the lessee for the purpose of trade, whether it be made of brick or wood, is removable at the end of the term. Indeed, it is difficult to conceive that any fixture, however solid, permanent, and closely attached to the realty, placed there for the mere purposes of trade, may not be removed at the end of the term. In the case of Wagner v. Cleveland & T. R. Co., 22 Ohio St. 563, *it was held that stone piers built by railroad company as a part of its road on lands over which it had acquired the right of way, did not, though firmly imbedded in the earth, become the property of the owner of the land, as a part of the realty; and that, upon the abandonment of the road, the company might remove such structures as personal property.*" (Emphasis ours.)

There is also a line of cases which make considerable distinctions in the law of fixtures between railroads and other types of business. In Illinois Central Railroad Company v. Hoskins (1902), 80 Miss. 730, 32 So. 150, a suit to collect damages for

wrongful entry on the property by a railroad, wherein at page 151 of the opinion it is stated as follows:

" . . . . It is a general rule of law that whatsoever chattels are attached to the realty with the manifest intent that they remain there become part and parcel of it, and cannot be removed without the consent of the owner of the freehold to whom they are considered a gift; but to this rule there are exceptions, and among others is the superstructure of a railway company. Such a company exercises the right of eminent domain,—a governmental function,—and takes no freehold but a mere easement, and therefore cannot be said to have intended to attach its rails and ties and other appliances to the freehold. They are constructed also for the public use and enjoyment, and it is their quality in this respect that distinguishes the acts of the company in their construction from those of a trespasser or others; . . . . "

Further and on the same page of said opinion it is said:

" ' . . . A railroad company can take no freehold title, and when its proper use of the easement ceases the franchise is at an end. There is no intention in fact to attach the structure to the freehold. We have, therefore, these salient features to characterize the case before us, to wit: The right to enter on the land under authority of law to build a railroad for public use; the acquisition thereby of a mere easement in the land; the entire absence of an intention to dedicate the chattels entering into its construction to the use of the land; the necessity for their use in the execution of the public purposes; and lastly, the power to retain and possess these chattels and the structures they compose by a valid proceeding at law, notwithstanding the original legality of the entry. There are some analogies bearing remotely on the question before us, showing that property is not gained by the owner of the land because found upon it,' etc. In

Railroad Co. v. Dunlap, 47 Mich. 456, 11 N.W. 271, the Supreme Court . . . . said: 'We are of the opinion that no error was committed in excluding from the compensation allowed to Dunlap the value of the railroad track laid upon the land. The railroad company, whether rightfully or wrongfully, laid its track while in possession, and for purposes entirely distinct from any use of the land as an isolated parcel. It would be absurd to apply to land so used, and to a railroad track laid on it, the technical rules which apply in some other cases to structures inseparably attached to the freehold.' In Jones v. Railway Co., 70 Ala. 227, Brickell, C. J., ably demonstrates that the necessary structures for a railroad, placed upon land by one having the power of eminent domain, continue, under all circumstances, the personal chattels, of such one. This rule is announced in Railroad Co. v. Le Blanc, 74 Miss. 650, 673, 21 South. 760, where many of the authorities supporting it are cited with approval."

In St. Louis, K. & S. W. R. Co. v. Nyce et al. (1900), 61 Kan. 394, 59 P. 1040, the question was whether or not a railroad which had taken the right-of-way from the land owner subsequent to a prior mortgage lost its line by foreclosure of the superior mortgage. The court held that the railroad lost its right-of-way but not its line for the reason that the line was not part of the realty. In that case the court considered at some length, commencing at page 1042 of the opinion, this whole problem, saying in part as follows:

" . . . It becomes necessary, therefore, to consider in the outset, the nature of the improvements placed upon the land by the railroad company, and their character, as affected by the relations sustained toward the public by such companies. From early times it has been held that buildings adopted and used for the purposes of trade are recognized as an exception from the general rule which obtains as to buildings constructed

for other purposes, in that the former do not become a part of the real estate, when affixed thereto, from the fact of their erection alone. This doctrine was announced by Lord Ellenborough in 1802, and later by the supreme court of the United States in Van Ness v. Pacard, 2 Pet. 137, 7 L.Ed. 374. In the latter case the improvement was a large house, built and used as a family residence, and it was sought to have the question depend upon whether the building was removable or not; but the court held that the size of the building, whether it had a brick foundation or not, or was one or two stories high, or had a brick chimney, was immaterial; the sole consideration being whether or not it was designed for the purposes of trade. If so, it was a fixture, which might be severed and removed by the person erecting the same. This distinction was applied in the case of Wagner v. Railroad Co., 22 Ohio St. 563. Stone piers were built by a railroad company on premises over which it was authorized to construct its road, and the question determined was whether they were so annexed to the land as to become the property of the owner of the land. The court held that the use of the strip of land on which the piers were built was granted to the railroad company for the purpose of constructing a part of a continuous line of railroad which it was authorized to build and operate. The piers were held to be as much a part of the road as the bridge they supported, or the rails or ties. The road was alone adapted for the transportation of persons or property. All its parts were merely accessory for its business, and were put on the land for this purpose, and not as accessories to the land over which the road was to pass. That part of the road built on the premises of the party plaintiff in error in the suit, disconnected from other parts of the road, could not be operated and would be useless as a railroad, nor could it serve any useful purpose as an appurtenance to the land on which it was built. It is said in the opinion: 'The general principle to be kept in view, which underlies all questions of this kind, is the distinction between the business which is carried on in or upon the premises and the premises, or locus in quo. The former is personal in its nature, and articles that are merely accessory to the business, and have been put on the premises for this purpose, and not as accessions to the real estate, retain the personal character of the principal, to which they appropriately belong and are subservient. But articles which have been annexed to the premises as accessory to it, whatever business may be carried on upon it, and not peculiarly for the benefit of a present business, which may be of a temporary duration, become subservient to the realty, and acquire and retain its legal character. * * * The railroad company acquired an easement in the land to construct and use its road thereon. It did not bind itself to the landowner either to build or maintain the road, and it could change the character of the structure at pleasure. Nor do we perceive any good reason why, in the act of building, it should lose its right of property in the structure when built, or in the materials of which it was composed. The landowner retained his land subject to the easements, and the company owned the easement and the structure it was designed to support.' Again, in Northern Cent. Ry. Co. v. Canton Co. of Baltimore, 30 Md. 347, it was held that a railway came within the rule regarding trade fixtures; that it was not an accessory to the enjoyment of the freehold, or in any manner necessary and convenient for the occupation of the land by the party entitled to the inheritance. The court said: 'A railway is certainly quite as essential to the trade and business of a railway company as a steam engine and the house which may cover it, or any other fixture, can be to the miller or the miner. * * * Prima facie, a house, with its foundation planted in the soil, is real property; yet when it is ac-

cessory to trade, and in law a trade fixture, we find all the authorities regard it as personal property. The same doctrine is applicable to the railway in question.' See, also, Railroad Co. v. Deal, 90 N.C. 110; Railroad Co. v. Hesser (Cal.) [184 Cal. 435] 24 Pac. 288; Navigation Co. v. Mosier, 14 Or. 519, 13 Pac. 300; Jones v. Association, 70 Ala. 227; Justice v. Railroad Co., 87 Pa.St. 28; Newgass v. Railway Co., 54 Ark. 140, 15 S.W. 188."

The Supreme Court of Oklahoma has also embraced the holding of the Nyce case in Kay County Gas Co. v. Bryant, 135 Okl. 135, 276 P. 218.

In that case a pump station and related facilities had been located on a four acre tract of Indian land pursuant to license granted by the Secretary of Interior. The question arose as to whether or not the buildings, pump station and pipe lines became a part of the realty to the extent that the same might not be removed.

The court considered 8555, C.O.S.1921, which is the forerunner of Title 60, Sec. 334 Oklahoma Statutes Annotated, which from the quoted statute in the opinion is identical to the present Section 334. The court in effect found that buildings and other improvements erected on land of another with the owner's consent or license, do not generally become a part of the realty and generally an agreement permitting removal thereof will be implied, citing considerable authority to that effect. The court also considered the tests of determining what is a fixture and what is not. The court at page 222, quoting from other authority, stated:

" 'The extent and mode of actual annexation have now little weight except in so far as it relates to the nature of the article itself, the use to which the article is applied, and other attending circumstances as indicating the intention of the party making the annexation' ".

Then on page 223 the court further stated as follows:

" * * * All the evidence, we think, the nature of the attachment of the property, the relation of the parties, the purpose for which the improvements were made, and the adaptability of the improvements for the peculiar purpose for which they were intended, show that these improvements remained the property and chattels of plaintiff, and also that no substantial hurt will come to defendants by reason of the removal thereof, which conclusion disposes of the controversy, and, for these reasons and under the authorities above cited and under the doctrine announced in our state, in the case of Texas Co. v. Henry, 34 Okl. 342, 126 P. 224, we hold that the court was in error in declaring these improvements fixtures and a part of the soil."

The Supreme Court in Kay County Gas Company v. Bryant, supra, recognizes this analysis on page 224 where it differentiates a case, Hinkle v. Bass Furniture Co., 117 Okl. 207, 246 P. 228, in which case shelving had been affixed to a sales room wall and was found to be a fixture. The court therein relied upon the fact that the shelving had use independent of the affixers' business and was particularly adaptable to the use of the basic real estate as a show room which was the use made of the building. The court said:

" . . . That case involved certain shelving which was without permission of owner attached to a store building. That was necessary for the purpose of improving the building itself to better the premises as a sales and store room. The improvements were in keeping with and necessary to, the general use of the building, the only purpose to which it was adapted. Clearly that case is differentiated from this case. There was no thought in this case of building houses or pump lines or pump station to improve the 400-acre farm, or to make it a better farm.

"In 26 C.J. p. 679, Fixtures, art. 43, we find 'An agreement that the article annexed shall retain the character of

personalty and be removable as such is ordinarily implied from the fact that the article or structure was annexed or erected by the license or permission of the land owner. * * * Annexations by railroad company under express permission or by force of a grant to it of a right of way, have been regarded as retaining their personal character.'

"To the same effect is St. L. K. & S. W. R. Co. v. Nyce et al., 61 Kan. 394, 59 P. 1040, 48 L.R.A. 241, which held that railroad, roadbed, bridges, side tracks, and station house erected on right of way were trade fixtures and did not pass under foreclosure of a prior mortgage on land out of which right of way was taken."

In the case of Gates v. Chicago, St. P. & K. C. R. Co., 82 Iowa 518, 48 N.W. 1040, the Supreme Court of Iowa at page 1041, defined "road bed" as follows:

" . . . The track of a railroad is not merely the rails and ties upon which the cars are run, but it is the 'road, course, way,' (Webster,) and includes all that enters in to and composes the road, the course, and way. The embankment upon which the rails and ties are laid is a part of the whole that makes the railroad track. . . ."

We have reviewed the facts and circumstances as adduced by the plaintiff in the instant case, and must disagree with the legal ruling of the trial court, to-wit:

"1. That the ballast and wooden bridge on the former right of way of St. Louis and San Francisco Company as they involve defendants' property have become and are an integral part of the land, are affixed thereto, and they are not the property of the plaintiff."

We hold that the ballast and wooden bridge on the former right-of-way was a part of the personal property of the St. Louis and San Francisco Company, thus subject to sale and removal.

We note from the record that the defendants have a cross petition still pending wherein they allege damage to the real estate by reason of the manner of removal by plaintiff of ballast. We therefore order that the trial court's sustaining of defendants' demurrer and the legal ruling above set out are hereby reversed and ordered set aside with directions to the trial court to proceed not inconsistent with the views herein set out.

Reversed and remanded with instructions.

ROMANG, P. J., and REYNOLDS, J., concur.