GRAND RAPIDS, LANSING & DETROIT RAILROAD COM-
PANY v. CROMBIE S. CHESEBRO ET AL.

[See 70 Mich. 650.]

*Railroad companies—Condemnation proceedings—Damages.*

1. Under our decisions, and under the Constitution of this State,
   there can be no *possessory* right in a railroad company adverse
   to the real owner, without either a license or a payment or
   tender *after* a *valid* condemnation.

2. It is a land-owner's absolute right not to be disturbed in his
   freehold, and no court has the right to divest possession in
   advance of condemnation, or to legalize it.

3. The fact that a railroad company is in possession when con-
   demnation proceedings are sought to be instituted will *not* of
   *itself* bar the jurisdiction. *Dunlap v. Railway Co.,* 50 Mich. 470;
   *Railway Co. v. Dunlap,* 47 Id. 456; *Morgan's Appeal,* 39 Id.
   675.

4. Usually, where there has been no *criminal* entry, there can be
   no very good reason why, unless forbidden by injunction, there
   should not be an inquest allowed, where all the statutory con-
   ditions have been respected.

   So *held,* where a railroad company went upon land under
   color of title, and commenced operations before condemnation,
   and without permission from the owners, who filed a bill to
   restrain the company, in which suit complainants' title was
   made out, but an injunction was refused in case condemna-
   tion proceedings were commenced within a specified time. See
   *Chesebro v. Circuit Judge,* 70 Mich. 650.

5. In the absence of proof to the contrary, the certificate of approval
   of a majority of the State Crossing Board, attested by the
   secretary, will be presumed to have been made at a lawful
   meeting.

6. A probate judge has no power to act as a *nisi prius* judge,
   presiding over a common-law jury, in condemnation proceed-
   ings, nor to direct what testimony shall go to the jury, and
   on what theories of damage.

7. Where by the construction of a railroad a tract of suburban

land is made unsuitable for a single farm, and a part of it made inaccessible for that purpose in whole or to some extent, it is error to confine the damages of the owner to the proportionate value of the part taken to that of the entire tract for *farming* purposes, but he is entitled to such damages as will fully make good all that results, directly or indirectly, to his injury in the *whole* premises and interests affected. ·

8. An interlocutory decree is no evidence of anything on the . merits.

9. On an inquest there can be no treble and no vindictive, damages.

10. The jury in condemnation proceedings, as in all cases where no certain measure of damages exists, must trust somewhat to their own judgment, that being one of the purposes for which juries of inquest are provided. They are expected to view the premises and use their own senses, both to obtain such information as an eye-witness can gain, and to interpret and comprehend the testimony of others, the purpose throughout being to give *all* the damages which they reasonably discover, past or present and to result, but no more.

Appeal from probate court of Kent county. Argued January 16, 1889. Decided April 19, 1889.

Condemnation proceedings. Respondents appeal from award of jury. Reversed. The facts are stated in the opinion.

*Smith & Stevens* (*C. B. Lothrop,* of counsel), for petitioner.

*Earle & Hyde,* for respondents.

CAMPBELL, J. The petitioner began proceedings against respondents on March 19, 1888, to procure by condemnation a right of way over 40 acres of land owned by respondents near Grand Rapids. This resulted in an award of $600, divided among the parties according to their several undivided estates. The proceedings are before us on appeal, partly on questions of jurisdiction and partly on questions arising on the inquest and on the

record.    The petition, which does not indicate that the case differed from any other application, sets out the usual preliminary allegations, and that a map and survey were duly approved June 30, 1887, for so much of the railroad line as reached Grand Rapids, and a further map in continuation to the terminus within the city in September, 1887.    The lack of ability to agree is averred to have been caused by the exorbitant demands of respondents, who are owners.    It appears, however, as a matter of fact, that the petitioner went upon the land, and began operations on it, in the summer or early fall of 1887, when respondents filed a bill to restrain them, in which defendants' title was made out, but an injunction was refused in case these proceedings should be commenced, and this ruling was made in February, 1888.    During that possession, which was wrongful, the work appears to have been completed, and the road opened and operated. We do not care to discuss the question of good faith in the entry, although it was evidently with notice of respondents' claims, and rested on a legal notion of the supposed effect of conveyances, and not on ignorance of fact.    But, on the record as it now stands, we do not deem it specially important.

The chief objections urged against having an inquest allowed refer to the silence of the petition on the real condition of affairs, and the effect of the tortious holding, as well as on supposed defects in the map and survey, and their approval by the State board.    Before passing to the questions presented under the inquest, it is necessary to refer to the preliminaries.    There can be no doubt, under our decisions and under the Constitution of this State, that there can be no possessory right in a railroad company adverse to the real owner, without either a license or a payment or tender after a valid condemnation. It is a land-owner's absolute right not to be disturbed in

his freehold. No court has the right to divest possession in advance of condemnation, or to legalize it. The utmost that can be claimed for the chancery proceedings in the record before us is that the court did not see fit to enjoin petitioner from possession, provided it proceeded to apply for condemnation. It in no way legalized the possession, or relieved petitioner from any action at law for the wrongful entry. The principle is elementary, and was recognized in *Marquette, etc., Railroad Co. v. Probate Judge,* 53 Mich. 217 (18 N. W. Rep. 788); *Toledo, etc., Railway Co. v. Railroad Co.,* 61 Id. 9 (27 N. W. Rep. 715); *Detroit, etc., Railroad Co. v. Probate Judge,* 63 Id. 676 (30 N. W. Rep. 598). It was held in *Port Huron, etc., Railway Co. v. Callanan,* 61 Mich. 12 (27 N. W. Rep. 717), that a pending suit for damages was not affected by condemnation proceedings. But, on the other hand, there have been several cases before us where a railroad was in possession when the petition was filed, and that fact alone is not enough to bar the jurisdiction. *Dunlap v. Railway Co.,* 50 Mich. 470 (15 N. W. Rep. 555), was a suit growing out of such a case, and *Toledo, etc., Railway Co. v. Dunlap,* 47 Id. 456 (11 N. W. Rep. 271), was a case where the railroad had got into possession by wrong, and had failed on one proceeding, which was fraudulent. *Morgan's Appeal,* 39 Mich. 675, was another case. We are not prepared to say that cases may not exist where such a wrongful possession has been assumed for the purpose of extorting terms that might indicate a lack of honest dis-ability to agree on a price. It is very certain that no one should be allowed to profit by his own wrong. But usually, where there has been no criminal entry, there can be no very good reason why, unless forbidden by injunction, there should not be an inquest allowed, where all the statutory conditions have been respected. This may affect the damages, but in most cases, at least, the remedies at

law are sufficient to secure justice. In the present case the inquest was properly sought.

We do not think the map and survey were insufficient, and the certificate of approval is presumptively good. In the absence of proof to the contrary, the certificate of a majority of the State board, attested by the secretary, will be presumed to have been at a lawful meeting. We should have some doubt whether the offer of $300 for the right of way was so made as to show a difficulty in making a reasonable arrangement. But, as it appeared one of the respondents was an infant, that fact alone was enough to save the jurisdiction. We think there was jurisdiction to start the proceedings, if the description in the map and petition was sufficient.

We think that the probate judge ruled incorrectly in holding that a competent surveyor was not as good a witness as any one else to test and apply the *data* on the map as sufficient guides for location. The object of having a map filed at all is to enable the public to know the line of the railroad. It is not to inform railroad experts and engineers, but people generally, and it must furnish reasonable means for doing so. But in the present case there is no difficulty in applying the description. It shows where the line enters and where it leaves the land, and the various bends and other lines of direction are easily inferred from what is shown. We have had frequent occasion to sustain the sufficiency of the jurors' oath and finding, so far as form is concerned, and need not dwell upon that. We think the jury had the case fairly before them.

But the proceedings before the jury appear to have been conducted in a peculiar method, not within the proper rules governing such cases, and appear to have led to conclusions that cannot be maintained. The probate judge acted throughout as if he had been a *nisi*

*prius* judge, presiding over a common-law jury, and assumed the whole responsibility of directing what testimony should go before them, and on what theories of damage. Whether he charged them or not does not appear, but his rulings on evidence had practically the same effect. Whether the Constitution will suffer the jury or commission of inquest to act in a court of common-law jurisdiction under the conditions applicable to other juries is a very serious question, but, so far as we know, it has not been attempted. The Constitution in such cases as the present allows either commissioners appointed by a court of record or a jury of freeholders to determine the necessity of public use, and to ascertain the damages. Commissioners form no part of the machinery of a court, and a jury of inquest is not a court. It has always been settled that the appropriation of private property did not come under the "judicial power," as it is located under the Constitution in courts, and except for the Constitution the nature of the tribunal of condemnation would have been discretionary with the Legislature. Highway commissioners act on the location of highways, and under the old Constitution public commissioners condemned land for State railroads. In the railroad special charters there was no instance of action by a common-law trial jury. Then, as under our present statutes, the jury was a jury of inquest, specially created, and not a trial jury. We held in *Toledo, etc., Railway Co. v. Dunlap,* 47 Mich. 456, where the jury was impaneled in a circuit court, that the only functions of the court were to set the proceedings in motion by organizing a jury or appointing commissioners, and affirming or vacating the award; and we held, further, that the jury were judges of law and fact, and not subject to interference by the judge, should he undertake to accompany them. The statute, which probably was in this respect borrowed from some other region,

while it does authorize a judge to go with and decide questions of law and swear witnesses, also allows him to deputize a circuit court commissioner to do the same thing. It would be absurd to consider such action as valid judicial action. It was held there, as it has been uniformly held, that the jury cannot be made subject to any such instruction, and must act on their own judgment. When the award comes up for confirmation, it may be attacked for irregularity or impeached on the merits in various ways, as it may be on appeal. But the award is and must be the jury's award, and reached in the jury's own way. If the jury see fit to accept rulings which are wrong, and act on them, their action will be reviewed accordingly, but as their own and not as the attending magistrate's ruling. See, to the same point, *Port Huron, etc., Railway Co. v. Voorheis,* 50 Mich. 506 (15 N. W. Rep. 882); *Marquette, etc., Railroad Co. v. Probate Judge,* 53 Id. 217.

This difficulty is still more apparent when the application is made to a probate court. Under our constitutional system, that court itself is, for most purposes, at least, a prerogative, and not a judicial, court, and has no jurisdiction over persons or property, except in such proceedings as relate to the estates of deceased persons, or those under disability and liable to wardship, This was referred to in *Detroit, etc., Railroad Co. v. Probate Judge,* 63 Mich. 676, where proceedings under this law were involved, and the power of such courts to meddle with the enjoyment of private property was denied, and the nature of their functions was explained.

As it has been usual in this Court to consider the proceedings without technicality and on the substantial merits, we shall not take up the special exceptions to the reception or exclusion of testimony singly, but refer to the main points, bearing on the tendency and effect

of the rulings, which the jury evidently acted upon as binding them, as they had no right to do. To understand these, a brief outline of the situation as shown by the record is necessary. Respondents—whose title, being set up in the petition as well as found by the jury, is not now open to question—owned a 40-acre tract, which was cultivated by a tenant in possession, about a mile from the city line of Grand Rapids. Petitioner's railroad, as approved by the State board, crossed this tract diagonally, in such a way as to cover about 4 acres, and cut off about 14 acres from the rest of the tract, and deprive it of access to any road, as well as separate it from the remainder, so that it could only be reached by crossing the railroad in some way. The judge refused to allow testimony that the railroad had been laid out on another and shorter line, as bearing on the necessity of this taking, but for some reason allowed testimony that the line had been changed at the request and procurement of other land-owners for a valuable consideration. This seems to have had some tendency to show that the line as changed was changed for private, and not public, convenience, although it did not show it was not of general advantage as a whole. But if the jury found that the road, as laid before them, was a public necessity, they could not properly refuse to find so on a theory that it might have been better located. There seems to have been a general rise in the price of land in that vicinity, owing in part to the prospect of a new outlet, and this rise was not only before the petition filed in this case, but before the road was actually constructed there, so that this 40 acres had an increased value with the rest.

Without going into the specific questions asked, we think that where land so situated is condemned the jury should consider it in all its bearings, and not as valuable

for one purpose only. An owner has a right to be indemnified for anything that he may have lost. The farming test, which is the one petitioner sought to apply, would be of no particular use in a great many cases of suburban lands. In the present case the tract was, according to several witnesses, and according to all probability, made unsuitable for a single farm, and a part of it made inaccessible for that purpose in whole or to some extent. There was no method of using it for any purpose requiring access to a railroad without a station or side track, or some other arrangement which defendants could not compel; and the mere taking of four acres for a right of way could not be regarded, in any sensible point of view, as compensated by one-tenth of the value of the forty acres, taking acre for acre. The damages in such a case must be such as to fully make good all that results, directly or indirectly, to the injury of the owners in the whole premises and interests affected, and not merely the strip taken. *Grand Rapids, etc., Railroad Co. v. Heisel,* 47 Mich. 393 (11 N. W. Rep. 212); *Dunlap v. Railway Co.,* 50 Id. 470; *Port Huron, etc., Railway Co. v. Voorheis,* Id. 506; *Barnes v. Railway,* 65 Id. 251 (32 N. W. Rep. 426); *Grand Rapids, etc., Railroad Co. v. Weiden,* 70 Id. 390 (38 N. W. Rep. 294). And unless a separate suit is brought and pending for past damages it is better practice and is necessary to cover them all in the award, and of course testimony will be receivable for that purpose. *Port Huron, etc., Railway Co. v. Callanan,* 61 Mich. 12; *Harlow v. Railroad Co.,* 41 Id. 336 (2 N. W. Rep. 48), and cases last cited.

On the hearing before the jury the interlocutory decree of the circuit court in chancery was admitted against objection, for the purpose apparently of affecting damages by the opinion of the court as to good faith; and, this being in, the testimony in that case was also received.

An interlocutory decree is no evidence of anything on the merits, and it is impossible to see on what ground any part of that record could come in. If in such an inquest vindictive damages were admissible, the circumstances themselves might no doubt be shown. But on an inquest there can be no treble damages and no vindictive damages, and the facts must appear by proof, and not by record. The jury here, as in all cases where no certain measure exists, must trust somewhat to their own judgment. That is one of the purposes for which juries of inquest are provided. They are expected to view the premises and use their own senses, both to obtain such information as an eye-witness can gain, and to interpret and comprehend the testimony of others. But the purpose throughout is to give all the damages which they reasonably discover, past or present, and to result, but no more. No one can read this record without seeing that the jury did not deal fully with the case. It is manifest that they gave no damages beyond what they assumed to be the price of four acres by the acre. The sum fixed was precisely what was agreed on by petitioner and Mrs. Bale for a title that she told them was not hers to give, and the value of which, estimated as good, they beat down much below her estimate. It cannot be said there is any real conflict as to the damages arising from the cutting off one part from the other of the 40 acres, and this was left out altogether, unless they disregarded the proofs of value wantonly, which we cannot believe. Neither is any allowance made for the time the petitioner had been in wrongful possession. The verdict is such as to show very clearly that the result must be due to a departure from correct practice, and a false view of the law. In such cases it is better to receive than to exclude testimony which may enlighten the jury; and, unless it is evident the jury has been misled to

injustice, their action will not be disturbed for technical reasons. We have therefore abstained from passing on some doubtful lines of testimony.

The award must be set aside, with costs, and a new jury sworn.

MORSE, J., concurred with CAMPBELL, J.

SHERWOOD, C. J. I agree with the views of my Brother CAMPBELL and the order directed by my brethren in this case, but I think, *further,* the jury have the right to pass, not only upon the necessity for the road, but also upon the necessity for taking any particular portion of the tract sought to be condemned for it.

CHAMPLIN, J. I concur in vacating the award for damages in this case, and in the direction to refer the assessment of damages to a new jury, for the reason that the damages of respondents, if any they had, for the use of the premises by the railroad company previous to the condemnation, do not appear to have been submitted to or passed upon by the jury. *Harlow v. Railroad Co.,* 41 Mich. 336; *Barnes v. Railway,* 65 Id. 251. The statute permits the judge of probate to attend the jury, to decide questions of law, and administer oaths to witnesses. But, as we have frequently held, the whole matter is in the hands of the jury after they are sworn, and the decisions of the probate judge are merely advisory. If he attends them at their request, and decides upon the admission or exclusion of testimony, it will be presumed, unless the contrary appears, that the jury have sanctioned and adopted his decisions. In this case no testimony was excluded from the consideration of the jury upon the question of damages, and, having viewed the premises, they were enabled to weigh the opinions of witnesses who testified, both as to the value of the land taken and as to damages. These opinions as to value ranged from $75

to $200 an acre. The petitioner produced witnesses to show its value for farming purposes. We held in *Mich. Air Line Railway v. Barnes,* 44 Mich. 222 (6 N. W. Rep. 651), that it was competent to ask what the land was worth for farm use. Mr. Garfield was a witness for respondents, and was asked, on cross-examination:

"*Q.* Is this estimate of yours based upon the value of the land for farming purposes?"

He replied:

"No; if it was, I should think possibly there wouldn't a railroad or anything else hurt it any. It might be made very easily a valuable property for gardening."

All of the witnesses describe the land through which the railroad runs as very light, sandy soil. Most of respondents' witnesses based their estimate of value upon the proximity of the land to the city of Grand Rapids and its adaptability to gardening purposes, and upon this basis they placed the value of the land taken at $150 an acre, and gave it as their opinion that the 14 acres lying east of the railroad was damaged one-half of its value, or from $75 to $80 an acre. Why this 14 acres was not as well adapted to gardening purposes after as before the railroad was constructed across it they did not explain, at least so as to make it plain to the jury. The law requires farm crossings to be constructed at the expense of the railroad company. It was not necessary for the jury to state the damages allowed for each separate cause, but they are authorized to award a gross amount, to cover all damage and compensation. *Mich. Air Line Railway v. Barnes,* 44 Mich. 222. And hence we cannot say upon this record how much they awarded for the land and how much for resulting damages. There can be no doubt that the railroad, crossing respondents' land in the manner it does, is a serious injury to the parcel, aside from the value of the land taken, and that the parcel on the

east of the track is affected by reason of the fact that a railroad must be crossed to enter upon or leave it by the owner of the other parcel. This is an element of damages that, under the testimony, must necessarily enter into the award of the jury, and the compensation therefor must be determined by them. I cannot say from the award that they did not determine it. We have held that a jury of inquest, acting upon a view of the property, are not conclusively bound by the opinions of witnesses, either as to value or damages. The object of such testimony is to aid them in coming to a just conclusion. The authorities are uniform upon this subject. *Patterson v. Boston,* 20 Pick. 159; *Head v. Hargrave,* 105 U. S. 45; *Anthony v. Stinson,* 4 Kan. 211; *Ward v. Lawrence,* 78 Ill. 295.

LONG, J., did not sit.