McDUFFEE *v.* FELLOWS.

1. EMINENT DOMAIN—TRIAL—FUNCTIONS OF JUDGE—PRACTICE—NATURE OF TRIBUNAL—CONSTITUTIONAL LAW.
    Instructions to the jury are not required of the probate judge presiding over proceedings in eminent domain for the purpose of condemning a right of way for a drain; the jury being the judges of the law and the facts, within the terms of section 2, Art. 18, Const. of 1850.[1]

2. SAME—ARGUMENT—APPEAL AND ERROR.
    Erroneous statements of the law made by counsel in arguing the question of necessity before the jury, will not warrant a reversal, in the absence of bad faith or unless the jury were misled.

Case made from Ottawa; Padgham, J. Submitted May 4, 1909. (Docket No. 91.) Decided July 15, 1909.

Certiorari by Daniel McDuffee, Sr., and another, to review the action of Edwin Fellows, drain commissioner, and Edward P. Kirby, probate judge, in condemnation proceedings for the establishment of a drain. A judgment for respondents is reviewed by petitioner on a case made. Affirmed.

*Lombard & Hext,* for appellants.

*Smedley & Corwin,* for appellees.

MONTGOMERY, J. This is a case made to review the decision of the circuit court for the county of Ottawa in a proceeding instituted by certiorari, by the plaintiffs and appellants to review proceedings had before the probate judge in a condemnation proceeding under the drain law, in which proceeding the necessity for taking property of the plaintiffs in error was determined by a jury duly impaneled.

[1] Const. of 1908, Art. xiii, § 2.

Two reasons were urged before the circuit court for setting aside the proceedings had in the probate court. The *first* was that the probate judge had refused to give a request to charge preferred by the plaintiffs in error, on the ground that it was not part of his duty to charge the jury; *second,* that counsel for the drain commissioner erroneously stated the law applicable to the case in his argument to the jury.

The question presented by the first point is whether, under section 2 of article 18 of the Constitution of 1850, which reads as follows: " When private property is taken for the use or benefit of the public, the necessity for using such property and the just compensation to be made therefor, except when to be made by the State, shall be ascertained by a jury of twelve freeholders, residing in the vicinity of such property, or by not less than three commissioners, appointed by a court of record, as shall be prescribed by law" —the jury provided for is in every sense of the word an adjunct of a court of record, and whether the parties interested have a right to have the jury instructed as in other cases. It is assumed by counsel for plaintiff in error that a jury trial at the common law involved in every case a separation of the duties of the court from those of the jury, that it was the duty of the court to determine all questions of law, and the duty of the jury to decide questions of fact, and from this premise it is ingeniously argued that, when the Constitution provided for a determination of the question of necessity by a jury of 12 freeholders, it clearly implied that such determination should be had by the common-law methods and under the instruction and direction of a court.

It may be open to question as to whether, in the case of a strictly common-law jury, in a trial by jury as such, it might not be within the legislative power to dispense wholly with any instructions to the jury; but, in view of the decisions of this court interpreting the section in question, we think it must be held as established that the tribunal contemplated by this section of the Constitution is a spe-

cial tribunal, and that, while the tribunal when consisting of a jury has some of the incidents of a common-law jury, the requirement that such jury shall be instructed by the court is not one of those incidents. Trial by jury was not, before the adoption of the Constitution, a prerequisite to condemnation of property for public use, under the power of eminent domain, and even under the Constitution of 1850, the assessment of damages for property thus taken may be by commissioners, and not by jury. See *McManus* v. *McDonough*, 107 Ill. 95.

In *Michigan Air Line Railway* v. *Barnes*, 44 Mich. 222 (6 N. W. 651), the court said:

"When the law provided how the tribunal should be constituted for these cases, and prescribed a method to be observed, it obviously contemplated that the practice respecting the admission of testimony should be as simple as a due regard to substantial justice would permit. It was not intended to leave the fate of the determination had in view to any fine-spun theories, or to the refinements which are not uncommon in trials at the circuit. They were not supposed to be necessary to the fundamental purpose or beneficial working of inquests of this nature, and no provision was made for the certain attendance of any one presumptively qualified to deal with them. The statute plainly assumes that the jury may conduct the inquiry without the aid of any legal expert, and under circumstances in which it would be difficult, if not impracticable, to preserve technical or hair-drawn questions in a shape to be reviewed. And, were the niceties of *nisi prius* to be insisted on, the proceeding would speedily break down under the perplexities and embarrassments due to its own methods."

In *Toledo, etc., R. Co.* v. *Dunlap*, 47 Mich. 456 (11 N. W. 271), it was said:

"The judge formed no part of this special tribunal. The statute indeed allows the judge to 'attend said jury, to decide questions of law and administer oaths to witnesses;' but the same statute which allows this allows him to designate a circuit court commissioner for the same purpose, and also allows the jury to proceed without either. Whatever the language of this statute literally

construed may mean, it is very clear that any such functions must at most be advisory. The jury will undoubtedly be regarded as accepting and doing what they permit to be done; but in all such cases the Constitution as well as the principles of the common law makes them judges of law and fact. *Chamberlin* v. *Brown*, 2 Doug. (Mich.) 120. Their conclusions are not based entirely on testimony. They are expected to use their own judgment and knowledge from a view of the premises, and their experience as freeholders, quite as much as the testimony of witnesses to matters of opinion."

In *Grand Rapids, etc., R. Co.* v. *Chesebro*, 74 Mich. 466 (42 N. W. 66), it was said:

"But the proceedings before the jury appear to have been conducted in a peculiar method, not within the proper rules governing such cases, and appear to have led to conclusions that cannot be maintained. The probate judge acted throughout as if he had been a *nisi prius* judge, presiding over a common-law jury, and assumed the whole responsibility of directing what testimony should go before them, and on what theories of damage. Whether he charged them or not does not appear; but his rulings on evidence had practically the same effect. Whether the Constitution will suffer the jury or commission of inquest to act in a court of common-law jurisdiction under the conditions applicable to other juries is a very serious question; but, so far as we know, it has not been attempted. The Constitution in such cases as the present allows either commissioners appointed by a court of record or a jury of freeholders to determine the necessity of public use, and to ascertain the damages. Commissioners form no part of the machinery of a court, and a jury of inquest is not a court. * * * We held in *Toledo, etc., R. Co.* v. *Dunlap, supra*, where the jury was impaneled in a circuit court, that the only functions of the court were to set the proceedings in motion by organizing a jury or appointing commissioners, and affirming or vacating the award; and we held, further, that the jury were judges of law and fact, and not subject to interference by the judge, should he undertake to accompany them. The statute, which probably was in this respect borrowed from some other region, while it does authorize a judge to go with and decide questions of law and swear witnesses, also allows him to deputize a circuit court com-

missioner to do the same thing. It would be absurd to consider such action as valid judicial action. It was held there, as it has been uniformly held, that the jury cannot be made subject to any such instruction, and must act on their own judgment. When the award comes up for confirmation, it may be attacked for irregularity or impeached on the merits in various ways, as it may be on appeal; but the award is and must be the jury's award, and reached in the jury's own way. * * * This difficulty is still more apparent when the application is made to a probate court. Under our constitutional system that court itself is, for most purposes, at least, a prerogative, and not a judicial, court, and has no jurisdiction over persons or property, except in such proceedings as relate to the estates of deceased persons, or those under disability and liable to wardship."

See, also, *Detroit, etc., R. Co.* v. *Campbell*, 140 Mich. 384 (103 N. W. 856); *Flint, etc., R. Co.* v. *Detroit, etc., R. Co.*, 64 Mich. 350 (31 N. W. 281).

It must be deemed as settled in this State that the jury contemplated by this section of the Constitution of 1850 is a special tribunal, and that they are judges of the law and fact, and it is not error for the probate judge to refuse to give them instructions.

It is claimed that the determination should be set aside for the reason that counsel for the drain commissioner contended for a wrong rule of law before the jury. It appears that counsel for the drain commissioner argued that, if the jury found any portion of the drain necessary and conducive to public health, they should then determine the whole of said drain as laid out, and the taking of plaintiff's land to be necessary, and that, as plaintiffs conceded the necessity of said drain below a certain highway bridge, the jury should determine the entire drain as laid out, and the taking of plaintiff's land to be necessary. It appears, on the other hand, that respondent's counsel conceded that the drain from the highway bridge to its terminus was necessary and conducive to the public health, but argued that from the commencement of said drain, to the point where the same leaves the land of

plaintiffs, there was no necessity for said drain on any consideration of the public health, and that, unless the jury should find that some consideration of the public health rendered necessary the taking of some portion of the land along the course of said drain, above the point where the same leaves the land of plaintiffs, then they must find said drain as a whole, and the taking of plaintiff's land for the purpose thereof, not to be necessary.

We cannot assume that the jury were misled by the contention of counsel. There is no evidence of bad faith, and it would be establishing a new precedent to hold that a contention of counsel for an erroneous rule of law was sufficient to vacate a proceeding of this character.

The judgment of the circuit court will be affirmed, with costs.

BLAIR, C. J., and HOOKER, McALVAY, and BROOKE, JJ., concurred.