## CHICAGO, DETROIT & CANADA GRAND TRUNK JUNCTION RAILROAD CO. *v.* SIMONS.

1. EMINENT DOMAIN—DAMAGES—BASIS OF AWARD—GENERAL RULE.
   It is the general rule that the tribunal whose duty it is to determine the value of land taken by eminent domain is not limited to the value of the land or the purpose for which it is actually used, but may consider all uses to which it is adapted and might be put, and will award compensation upon the basis of its most advantageous use.

2. SAME—INADEQUATE AWARD.
   An award of compensation based upon the value of the land for farming purposes, although within the range of the testimony, will be set aside by the Supreme Court as inadequate, where the uncontroverted testimony on the part of respondents showed that the value of the land for subdividing and platting purposes was much in excess of what it was worth for farming.

3. SAME—ARGUMENT OF COUNSEL—JURISDICTION.
   As to the power of the Supreme Court to set aside the award on the ground of intemperate argument of counsel to the jury,—*quære*.

Appeal from Macomb probate court; Reid, J. Submitted April 11, 1917. (Docket No. 133.) Decided March 27, 1918.

Condemnation proceedings by the Chicago, Detroit & Canada Grand Trunk Junction Railroad Company against David W. Simons and others to acquire certain land for railway purposes. From an order confirming the award of the jury, respondents appeal. Reversed.

*Lungerhausen & Lungerhausen* (*W. T. Hosner* and *Charles C. Simons,* of counsel), for appellants.

*Harrison Geer,* for appellee.

BIRD, J.    Plaintiff, being desirous of establishing switching yards in the vicinity of the eight-mile road north of the city of Detroit, filed a petition in the probate court for Macomb county to condemn two parcels of land lying along and adjacent to its right of way. One parcel contains 6.20 acres, the other 10.39 acres. On these parcels it is intended to construct 30 railway tracks over which 2,000 cars will be handled every 24 hours. A jury of 12 men were empaneled and heard the proofs touching the necessity and the value thereof.

The 6-acre parcel is taken from a 40-acre tract owned by defendants Simons, Beymer and Abbott. Its southern boundary is the eight-mile road, otherwise known as the county line between Wayne and Macomb counties, and is situated three miles north of the city limits. It lies within a mile and a half of the Gratiot avenue street car line and three-quarters of a mile from the VanDyke line. It was first platted in 1892 and replatted again in May, 1916, and contains 371 lots.

The 10-acre tract is owned by defendants Fuller and Becker. It lies northeast of the 6-acre tract and has a frontage on the nine-mile road, and is said to be well adapted for platting and subdivision purposes and especially for factory purposes.

Petitioner produced seven witnesses, six of whom were farmers, who valued the six acres at $400 per acre and the ten acres at $200 to $250 an acre; this estimate to include the damages to the remainder of the tract. Defendants' witnesses were mostly real estate men, who placed the value for subdividing and platting at from $1,000 to $1,500 per acre for the six acres and $1,000 to $1,200 for the ten acres. The parcels were estimated by petitioner's witnesses to be worth for farming purposes from $150 to $300 an acre.

The jury awarded the sum of $400 an acre for the 6-acre parcel and $350 an acre for the 10-acre parcel, these sums to include the damages to the tracts from which the parcels were taken. The award was subsequently confirmed by the probate court. Defendants filed objections thereto and appealed to this court. The objections, in substance, are that:

1. The award as to each parcel is grossly inadequate.

2. That the jury adjudged the damages solely from what the lands were worth for farming purposes.

3. Because of the inflammatory argument of petitioner's counsel.

1. While the statute confers upon this court appellate jurisdiction to review awards made in railway condemnation cases, it has always been very loth to reverse them on technical grounds, or because the damages were apparently excessive or inadequate, if they were within the range of the testimony. These awards are within the range of the testimony and, therefore, I am of the opinion that the awards should not be set aside solely on the ground covered by the first objection that they are grossly inadequate. I am impressed, however, after studying the record, that the second objection considered in connection with the first one is well taken. The amount of the awards, together with the testimony, is very convincing that the jury awarded damages for the parcels based solely on their value for farming purposes. It is urged by respondents that the parcels were more valuable for platting or subdivision purposes than for farming purposes. If they were, the owners had a right to have the damages assessed on that basis. Mr. Justice CAMPBELL, in reviewing proceedings to take lands for railway purposes just outside the city of Grand Rapids, said:

"We think that where land so situated is condemned the jury should consider it in all its bearings and not as valuable for one purpose only. An owner has a

right to be indemnified for anything he may have lost. The farming test, which is the one petitioner sought to apply, would be of no particular use in a great many cases of suburban lands." *Grand Rapids, etc., R. Co.* v. *Chesebro*, 74 Mich. 466.

The general rule is stated elsewhere, as follows:

"The tribunal whose duty it is to determine the value of land taken by eminent domain is not limited to the value of the land or the purposes for which it is actually used, but may consider all uses to which it is adapted and might be put, and will award compensation upon the basis of its most advantageous and valuable use." 10 R. C. L. 130, and cases cited.

In *Missouri, etc., R. Co.* v. *Roe*, 77 Kan. 224, it was held that:

"The plaintiff was entitled to compensation according to the most advantageous and profitable use he could make of his land," and further that "the defendant could not insist that the plaintiff treat his entire holdings as a farm in order to minimize his damages."

The petitioner proceeded throughout on the theory that the tracts from which the parcels were taken were farming lands. It is asserted and not denied that the witnesses were interrogated by petitioner's counsel as to the value of the parcels for farming purposes and for no other. Petitioner's witnesses expressed their opinions as to the value of the parcels for farming purposes and added a sum to those values for detaching a portion of the tract and for the damages to the portions remaining. The value fixed by these witnesses agree so nearly with the amount awarded that it is difficult to avoid the inference that the jury awarded damages for the parcels, on the theory that their chief value was for farming purposes. The record shows that the 6-acre tract had been platted in 1892 and was sold by Simons to Abbott and Beymer upon contract for $900 an acre in May, 1916; that $2,000 an acre was paid for the subdivision south

of it, and another subdivision on the eight-mile road, three-quarters of a mile west, had been subdivided and partially sold; that petitioner had paid $470 per acre for a tract of 38 acres, which lay north and east of the ones involved. Several witnesses familiar with the work of subdivision testified that the 6-acre tract was worth from $1,000 to $1,500 per acre for subdivision purposes and that the 10-acre tract was worth from $1,000 to $1,200 per acre. This showing makes it obvious that these tracts had some value for subdivision and platting purposes, and that such value was far in excess of its value for farming purposes. Persuaded as we are that the jury arrived at the amounts returned by the farming test, we think they proceeded, if not upon a wrong basis, upon a too narrow one, and that little or no consideration was given to the respondents' testimony (which was not controverted), that the value of the parcels for subdivision and platting was much in excess of what they were worth for farming purposes. Because of this the awards must be set aside.

3. Objection is made to the following portion of counsel's argument:

"You have heard the evidence, gentlemen, in regard to the transaction between Mr. Simons and Abbott and Beymer. That deal was put through for the purpose of holding up the railroad company. The land was sold by Simon, not 'Simple Simon,' but David Simon, a Jew, and his nation is the sharpest nation on earth. He made the deal with a couple of real estate sharks, men who make it a business of skinning the public and defrauding and robbing the poor laboring man, the widows and orphans, by their crooked and fraudulent lot selling schemes. Are you going to assist such crooks as these in mulcting this railroad company? They would defraud you if they had the opportunity. I hope, gentlemen, that none of you or your friends ever get into the clutches of these crooks."

This intemperate outburst upon the part of counsel

was not warranted by the testimony. Indeed, we do not understand that he attempts to excuse it in its entirety. How far it may have influenced the jury upon the question of value and thereby affected the awards, we are unable to say. Whether we should interfere with proceedings under this statute to the extent of setting them aside on this ground we think it unnecessary to decide, as the awards must be vacated for reasons already stated.

The awards must be set aside and an inquest made before a new jury. The respondents will recover their costs in this court.

OSTRANDER, C. J., and MOORE, STEERE, BROOKE, FELLOWS, STONE, and KUHN, JJ., concurred.