CITY OF DETROIT *v.* HARTWICK.

1. EMINENT DOMAIN — CONDEMNATION PROCEEDINGS — EVIDENCE — AMENDMENT—PARTIES.

Where defendant in condemnation proceedings had purchased the premises in question upon contract which he was using as collateral at a certain bank, the contract was properly received in evidence, and the court below was not in error in allowing an amendment making the bank a party.

2. SAME—PARTIES—OBJECTIONS—APPEAL AND ERROR.

While an objection that the bank, although made a party, was given no opportunity to be heard, might have some

force if made by the bank, it was without merit when urged in behalf of defendant.

3. SAME—NECESSITY—EVIDENCE—SUFFICIENCY.
Evidence on the question of necessity, held, sufficient to justify the finding of the jury.

4. SAME—WITNESSES—QUALIFICATIONS.
The testimony of a lay witness as to the value of a piece of land he had never inspected was inadmissible.

5. SAME—APPEAL AND ERROR—HARMLESS ERROR.
Errors assigned in condemnation cases should not work a reversal unless it is made apparent that the verdict was materially affected by them.

Error to recorder's court of Detroit; Connolly, J. Submitted October 16, 1918. (Docket No. 64.) Decided April 3, 1919.

Condemnation proceedings by the city of Detroit against Edward E. Hartwick and others for an alley. From an order confirming an award of the jury, defendants appeal. Affirmed.

*Van De Mark & Sward* (*F. B. Brown*, of counsel), for appellants.

*Thomas P. Penniman* (*Allan H. Frazer*, of counsel), for appellee.

BIRD, C. J. The city of Detroit filed its petition in the recorder's court to condemn a strip of land, sixteen feet in width, for an alley in the rear of lots facing Guilloz street, between Euclid and Clay avenues. The jury found the strip was necessary for alley purposes and awarded the owners of the fee the sum of $3,678.22. These findings were later confirmed by the court, from which the defendants appeal.

*Assignments 6, 9 and 10.* It appeared upon the inquisition that defendant Hartwick purchased the premises in question from Julius Stroh and others

and that Hartwick was then using the contract as collateral security to certain of his loans at the People's State Bank. When this developed counsel for the city asked that the People's State Bank be made a party to the proceeding and it was so ordered despite defendant's objection. It was important for the city to know who were interested in the property proposed to be taken, and when ascertained, it was proper that they should be made parties. We see no impropriety in receiving the contract in evidence for the reason that it was disclosed other parties were interested in the premises, nor do we think it was error to allow the amendment making the bank a party. Counsel assert that the bank was made a party but given no opportunity to be heard. This objection might have some force, if made by the bank, but we think it has no merit when urged in behalf of defendant Hartwick.

*Assignment 20.* Counsel contend that the evidence bearing on the question of necessity was insufficient to justify the jury in making the finding which they did. The record shows that these lots are only about 40 feet in depth and that many of the houses built thereon are built up to the rear lot line. There is an open field in the rear which is being rapidly utilized for manufacturing plants. It was shown by the health officer that if the industrial plants were built up to the lot line it would contaminate the air and lessen the sunlight in the vicinity. The necessity also appeared in the disposal of the garbage. At the present time the garbage is not collected but is thrown out upon the field, whereas, if an alley were created it would come within the ordinance and be stored and collected as it is elsewhere in the city. There was considerable uncontradicted testimony taken bearing on the question of necessity and we think it was ample to justify the finding made by the jury.

*Assignment 16.* One W. S. Crowl was offered as a witness by defendants on the question of value. He testified, in substance, that he was general agent for the Michigan Central Railroad Co., in charge of its industrial matters, and as such he was familiar with factory sites, their location and value; that he knew where the tract in question lay but admitted that he had never examined this particular one. It further appeared from his testimony that he had recently negotiated with others for a factory site, six or seven miles distant. The trial court refused to take his opinion of the value for the reason that he had not shown himself qualified to speak on that question. Upon this showing it would hardly be contended he had a right to testify as an expert, but counsel say, and rightly so, that one does not have to be an expert to testify on the question of the value of land. But, ordinarily, before a lay witness is permitted to testify to the value of land he must show that he has seen the land and has some knowledge of the value of other lands in the immediate vicinity. Lawson on Expert Evidence, p. 475; *Mewes* v. *Pipe Line Co.,* 170 Pa. 367 (32 Atl. 1082) ; *Stone* v. *Covell,* 29 Mich. 359. The witness, Crowl, must be regarded as a lay witness, and in view of his testimony that he had never inspected the premises about whose value he was to testify, we think it was not reversible error to exclude his testimony.

Some other assignments are touched upon in the brief but it will suffice to say that we do not think the errors complained of, if they were errors, so materially affected the jury's conclusions that they should work a reversal of the award. Under the practice, errors assigned in condemnation cases should not work a reversal of the finding of the jury unless it is made apparent that the verdict was materially affected by them. *Grand Rapids, etc., R. Co.* v. *Chesebro,* 74

Mich. 466. The observations of Mr. Justice CAMPBELL in the case cited are applicable here. In part it was there said:

"But the proceedings before the jury appear to have been conducted in a peculiar method, not within the proper rules governing such cases, and appear to have led to conclusions that cannot be maintained. The probate judge acted throughout as if he had been a *nisi prius* judge, presiding over a common-law jury, and assumed the whole responsibility of directing what testimony should go before them, and on what theories of damage. * * * Then, as under our present statutes, the jury was a jury of inquest, specially created, and not a trial jury. We held in *Toledo, etc., R. Co.* v. *Dunlap*, 47 Mich. 456, where the jury was impaneled in a circuit court, that the only functions of the court were to set the proceedings in motion by organizing a jury or appointing commissioners, and affirming or vacating the award; and we held, further, that the jury were judges of law and fact, and not subject to interference by the judge, should he undertake to accompany them."

It was said in the recent case of *Chicago, etc., R. Co.* v. *Simons*, 200 Mich. 76, that,—

"while the statute confers upon this court appellate jurisdiction to review awards in condemnation cases, it has always been very loth to reverse them on technical grounds or because the damages were apparently excessive or inadequate, if they were within the range of the testimony."

Applying this rule we find nothing in the present case which calls for a reversal of the conclusions reached by the jury.

The award is affirmed. Costs will be granted in this court to plaintiff.

OSTRANDER, MOORE, STEERE, BROOKE, FELLOWS, STONE, and KUHN, JJ., concurred.