CITY OF DETROIT *v.* FIDELITY REALTY CO.

1. APPEAL AND ERROR—EMINENT . DOMAIN—POWERS OF SUPREME COURT ON REVIEW.

Proceedings for condemnation of land for public purposes are not according to the course of the common law, and the Supreme Court has not the broad power of reviewing rulings made during the course of the hearing or inquest that it has of reviewing rulings made upon *nisi prius* trials.

2. SAME—EVIDENCE—ADMISSIBILITY—CAUSE FOR REVERSAL.

While strict rules as to admissibility of testimony are not always enforced, where prejudicial, inadmissible testimony was received and acted upon by the jury or where competent testimony going to the merits was excluded which if admitted would have changed the result, or where the record discloses that an erroneous theory of the law was

adopted by the jury to the prejudice of the appealing party, this court, upon appeal, will reverse.

3. EMINENT DOMAIN—WITNESSES—COMPETENCY—VALUE OF PREMISES.

Where a witness testified that he was familiar with land values in the locality of the premises sought to be condemned, but it developed that his familiarity was based on what he had been told by others, the exclusion of his testimony as to the value of said land was not reversible error.

4. SAME—TRIAL—INSTRUCTIONS—VALUE OF PREMISES.

Where it appeared that the premises in question had been recently sold and a mortgage taken back for part of the purchase price, the trial judge properly instructed the jury that the good faith of the parties to the transaction was not an issue, but that the value fixed by the transaction should be considered by them in making their award if the transaction was in all regards a *bona fide* one, and that the good faith was involved for this purpose only.

5. SAME—EVIDENCE—INFERENCES.

*Held*, under all the circumstances revealed in this record, that it was within the province of the jury to infer that the valuation fixed in the deal was not in all regards a *bona fide* one.

6. SAME—CONDUCT OF COUNSEL—TRIAL—VALUE OF PREMISES.

It was improper for counsel for plaintiff to persist in his attempt, by asking questions, to get before the jury the result of former condemnation proceedings after objection thereto had been sustained.

7. SAME—CONDUCT OF COURT AND COUNSEL—CURING ERROR.

Conduct of counsel for plaintiff and the trial judge, although much of it is to be condemned, *held*, not prejudicial, where the judge gave an exceptionally fair charge and admonished the jury to disregard the incidents of the trial and be guided by the testimony.

8. SAME—MOST ADVANTAGEOUS USE OF PREMISES—QUESTION FOR JURY.

Where the land sought to be condemned was a long, narrow strip, and the most advantageous use to which it could
213—Mich.—29.

be put was in direct dispute, the question was one of fact for the jury.

9. SAME—AMOUNT OF AWARD SUSTAINED BY EVIDENCE.

The award of the jury will not be reversed in this court where it was within the range of the testimony, although higher than the valuation of the plaintiff, and lower than that contended for by defendants.

10. SAME—JUST COMPENSATION RULE OF DAMAGES NOT AMOUNT OF MORTGAGE.

The contention of defendant mortgagee that he was at least entitled to the amount of his mortgage is untenable, since where, as here, there are no severance damages or other circumstances to vary the rule, just compensation is measured by the fair market value of the premises, and this is neither increased nor diminished by the fact that a mortgage has been executed on the property.

11. SAME—IMPROPER APPORTIONMENT OF AWARD TO BE CORRECTED BY COURT.

Where the jury awarded compensation but improperly apportioned it among defendants, the error, being one of law, was one which the trial court could by the terms of the act (Act No. 541, Local Acts 1903), correct by amendment.

12. SAME—MORTGAGOR NOT ENTITLED TO SHARE IN AWARD.

Where the proceedings took from the mortgagee his entire security, and the award was less than the amount owing to him, it was not within the province of the court to award a part of the money to the mortgagor and a part to the mortgagee, but the latter was entitled to have added to his award the amount awarded to the mortgagor.

Error to recorder's court of Detroit; Jeffries (Edward J.), J. Submitted January 12, 1921. (Docket No. 104.) Decided March 30, 1921. Rehearing denied July 19, 1921.

Condemnation proceedings by the city of Detroit against the Fidelity Realty Company and Joseph F. Weber to acquire land for hospital purposes. Judgment for plaintiff. Defendants bring error. Reversed as to defendant Weber and remanded with instructions.

*Earl S. Heenan,* for appellant Weber.

*William Henry Gallagher,* for appellant realty company.

*Clarence E. Wilcox,* Corporation Counsel, and *Thomas P. Penniman* and *John R. Watkins,* Assistants Corporation Counsel, for appellee.

FELLOWS, J. This is condemnation proceedings brought by the city of Detroit under the provisions of Act No. 541, Local Acts 1903, to acquire title to lands for hospital purposes. The city for some time has had quite pretentious plans for its hospital development. In 1908 it acquired of defendant Weber a 10-acre parcel for this purpose at $2,500 per acre. The parcel lies between Hamilton boulevard and Schmittdiel avenue. On the north of this parcel and lying between it and Taylor avenue is a strip of land 28.8 feet wide at the east end and 32.8 feet wide at the west end, extending the entire length of the hospital grounds, 811 feet. This strip of land was then owned by defendant Weber, but through some slip in the negotiations was not then acquired by the city. Something like a million dollars has been expended in erecting hospital buildings, and the plans contemplate the erection of other structures. This proceeding seeks to acquire this narrow strip. The jury found the necessity for the taking existed and made an award which we shall presently detail. Both defendants review the case here. In the main their objections are common, but in at least two regards specific objection is made on behalf of defendant Weber.

Before taking up the points made by the appellants we should give heed to the character of the proceedings and the power of this court in reviewing them. They are not according to the course of the common law, and under our former decisions this court has not

the broad power of reviewing rulings made during the course of the hearing or inquest that it has of reviewing rulings made upon *nisi prius* trials according to the course of the common law. In *Michigan Air Line Ry. v. Barnes*, 44 Mich. 222, a condemnation proceeding, it was said by Mr. Justice GRAVES, speaking for the court:

"When the law provided how the tribunal should be constituted for these cases, and prescribed the method to be observed, it obviously contemplated that the practice respecting the admission of testimony should be as simple as a due regard to substantial justice would permit. It was not intended to leave the fate of the determination had in view to any fine-spun theories, or to the refinements which are not uncommon in trials at the circuit. They were not supposed to be necessary to the fundamental purpose or beneficial working of inquests of this nature, and no provision was made for the certain attendance of any one presumptively qualified to deal with them. The statute plainly assumes that the jury may conduct the inquiry without the aid of any legal expert, and under circumstances in which it would be difficult, if not impracticable, to preserve technical or hair-drawn questions in a shape to be reviewed. And were the niceties of *nisi prius* to be insisted on, the proceeding would speedily break down under the perplexities and embarrassments due to its own methods. The conclusion to which these and other considerations lead is that a very large discretion in admitting and rejecting testimony is left to the jury, or the attending officer, whenever there is one, and that when the case is brought here by appeal the award cannot be disturbed on account of such decisions, unless it is fairly evident, in view of the facts and circumstances, that the ruling was not only inaccurate, but was a cause of substantial injustice to the appellant in the matter of the result."

Following this, in *Toledo, etc., R. Co. v. Dunlap*, 47 Mich. 456, Mr. Justice CAMPBELL, who wrote for the court, said:

"The remaining errors assigned refer to various rul-

ings and testimony bearing upon the question of public necessity. Some of them have been raised on what is a mistaken notion of the character of these proceedings. The circuit judge attended the sittings of the jury, and admitted or excluded testimony, and charged the jury precisely as on a trial.

"The judge formed no part of this special tribunal. The statute indeed allows the judge to 'attend said jury, to decide questions of law and administer oaths to witnesses.' Art. 2, § 21. But the same statute which allows this allows him to designate a circuit court commissioner for the same purpose, and also allows the jury to proceed without either. Whatever the language of this statute literally construed may mean, it is very clear that any such functions must at most be advisory. The jury will undoubtedly be regarded as accepting and doing what they permit to be done. But in all such cases the Constitution, as well as the principles of the common law, makes them judges of law and fact. *Chamberlin* v. *Brown,* 2 Doug. (Mich.) 120. Their conclusions are not based entirely on testimony. They are expected to use their own judgment and knowledge from a view of the premises, and their experience as freeholders, quite as much as the testimony of witnesses to matters of opinion. And while an appellate court is bound in such cases to set aside proceedings which appear to be based on false principles, it cannot properly deal with rulings as if they were excepted to on a common-law trial or dispose of the controversy on merely technical notions."

Among the cases in this court where the general character of the proceedings to condemn land and the functions of this court on review are discussed will be found the following: *Flint, etc., R. Co.* v. *Detroit, etc., R. Co.,* 64 Mich. 350; *Grand Rapids, etc., R. Co.* v. *Chesebro,* 74 Mich. 466; *Detroit, etc., R. Co.* v. *Crane,* 50 Mich. 182; *Port Huron, etc., R. Co.* v. *Voorheis,* 50 Mich. 506; *Fort Street Union Depot Co.* v. *Backus,* 92 Mich. 33; *Fort Street Union Depot Co.* v. *Jones,* 83 Mich. 415; *Saginaw, etc., R. Co.* v. *Bordner,* 108 Mich. 236; *Marquette, etc., R. Co.* v. *Longyear,* 133 Mich.

94; *Detroit, etc., R Co.* v. *Campbell,* 140 Mich. 384; *Boyne City, etc., R. Co.* v. *Anderson,* 146 Mich. 323 (8 L. R. A. [N. S.] 306, 10 Ann. Cas. 283); *McDuffee* v. *Fellows,* 157 Mich. 664. These cases and others which might be cited demonstrate that it is a recognized rule of this court in condemnation cases that strict rules as to the admissibility of testimony are not always enforced, that ordinarily this court will not set aside the award because of the introduction of improper evidence or improper rulings of a trial judge where one attends, but that where prejudicial, inadmissible testimony was received and acted upon by the jury, or where competent testimony going to the merits was excluded which if admitted would have changed the result, or where the record discloses that an erroneous theory of the law was adopted by the jury to the prejudice of the appealing party, this court upon appeal will reverse. As was tersely stated by Justice GRANT in *Fort Street Union Depot Co.* v. *Jones, supra:*

"Appellate courts should not interfere, unless the errors complained of are such as may fairly be said to have had a controlling influence in securing the result."

Thus in *Chicago, etc., R. Co.* v. *Simons,* 200 Mich. 76, we reversed the case because the record disclosed that the jury had not given consideration to the value of the land upon the basis of its most advantageous use, and in *Village of Ecorse* v. *Railway Co., ante,* 445, we reversed because the trial judge declined to admit evidence of the most advantageous use of the property and its value for such use, while in numerous other cases we have affirmed where the record did not disclose that the errors complained of were in any way influential in obtaining the verdict.

While numerous assignments of error are found in the record, counsel here urges them under nine heads.

We are impressed that some of these may be considered together. We will pursue that course. Defendants called as a witness a real estate dealer named Calihan, who at first testified that he was familiar with land values in the locality of these premises. As his testimony developed, however, it demonstrated that his sole familiarity with such values was based on what he had been told by others. He had not operated in this vicinity, so far as the record disclosed, nor did he possess any personal knowledge of any transactions in the locality. His testimony was therefore excluded. While this court has been quite liberal in admitting testimony as to land values (see *Wallace* v. *Finch*, 24 Mich. 255; *Stone* v. *Covell*, 29 Mich. 359; *Huff* v. *Hall*, 56 Mich. 456; *McCormick* v. *Bradbury*, 187 Mich. 512), we are not persuaded that we should vacate this award for the failure to receive the testimony of this witness (see *Kost* v. *Bender*, 25 Mich. 515; *City of Detroit* v. *Hartwick*, 204 Mich. 635). Numerous witnesses were called who had operated in this locality, were qualified to testify and whose testimony was received. We shall have occasion to refer to their testimony later.

The city in making its case showed the state of the title. This showed a deed from defendant Weber to defendant Fidelity Realty Company, bearing date February 24, 1916, and a mortgage bearing date the same day from the realty company to Weber for $22,500. Defendants' counsel complain because they say that the good faith of this transaction was permitted to be made an issue in the case; they insist that it was not properly an issue in the case, and that there was no testimony which took such issue to the jury if it was a proper one. The trial judge very carefully charged the jury, we think, that the good faith of the parties to the transaction was not an issue, but that the value fixed by the transaction should be considered by the

jury in making their award if the transaction was in all regards a *bona fide* transaction, and that the good faith of the transaction was only involved for this purpose. We do not perceive that this was error, nor are we persuaded that the facts in the case preclude the inference that the value fixed in the transaction was not in all regards its *bona fide* value. The manager of the realty company testified that Mr. Weber told him the city had before that brought condemnation proceedings which, as a matter of fact, had been abandoned. He knew the premises, and, if so, knew that this narrow strip cut off the hospital grounds from Taylor street and would eventually be needed by the city. He claims to have paid 10 per cent. of the purchase price down and given back a mortgage for 90 per cent. of it. The valuation fixed by the testimony of the city was much below that fixed in the deal. Under all the circumstances revealed in this record, we think it was within the province of the jury to infer that the valuation fixed in the deal was not in all regards a *bona fide* one.

Several assignments of error have to deal with the conduct of the counsel for the city and the trial judge. There was much in the conduct of both to be condemned. If counsel for the city and the trial judge had each been as anxious to conduct the hearing in an orderly manner as they were to scintillate, much that appears in this record would have been omitted. Counsel for the city attempted to get before the jury the fact that the first jury awarded $9,000. Upon objection this was shut out, but counsel persisted in such attempt. It was improper for counsel by asking questions to get before the jury the result of the former proceedings, and counsel should have known this. But the award by the jury in the instant case was more than double the amount claimed by counsel to be the amount of the first award and the city's testimony

showed that the property was worth more than that amount. We perceive nothing upon this record justifying the treatment accorded counsel for defendants by the trial judge, but an exceptionally fair charge was given by him, and the jury was admonished to disregard the incidents of the trial and be guided by the testimony. We are not prepared to hold upon this record that defendants' rights were prejudicially affected by this conduct.

It is insisted by defendants' counsel that the jury did not give consideration to the value of the premises for its most advantageous use and therefore the case falls within the holding in the case of *Chicago, etc., R. Co.* v. *Simons, supra.* The difficulty with this contention lies in the fact that the testimony of the respective parties as to what was the most advantageous use was in direct dispute. The strip was a narrow one. The ends fronting on Hamilton boulevard and Schmittdiel avenue were available for stores, but the most advantageous use of the balance of this narrow strip of about 30 feet in width was a matter of dispute. The expert of the city thought its most advantageous use was for garages or a storage house, while defendants' experts had worked out quite an elaborate plan for the erection of two-family flats. It seems to be admitted that under the building code of Detroit the strip was not available for residences fronting on Taylor avenue, but the plan contemplated the building of short streets about 30 feet long running crosswise of the strip and the erection of the two-family flats facing them. The manager of defendant realty company had procured two sets of plans for erecting houses on the strip, both of which have been rejected by the chief building inspector of the city and permits refused. A third plan had been worked out, he claimed, which was held up by these proceedings. Both the city and the defendants submitted their plans for the most advantageous

use of the property and sustained their plans with testimony, the credibility of which was for the jury. The jury had both plans before them; they heard the testimony; they visited the premises. They were justified on the testimony in accepting either plan as feasible, either plan as impractical. Their verdict indicates that they accepted the plan of using the strip for garages or a storage house rather than two-family flats facing short streets. Their verdict was higher than the valuation put on the premises by the city and considerably lower than the value contended for by the defendants, but it was within the range of the testimony and we are not persuaded that the record discloses such errors as would justify us in setting aside their valuation.

This disposes of the questions common to both defendants and we now take up the two questions specifically urged on behalf of defendant Weber. It is first insisted that defendant Weber is entitled to the full amount of his mortgage and that the award must at least equal its amount. This contention is untenable and the authorities cited do not support it, although they are applicable on the other question. This contention misconceives the rights of the parties. Private property may not be taken without "just compensation." On the other hand the public, where the necessity for the taking is found, is entitled to acquire the title upon payment of "just compensation." Where, as here, there are no severance damages or other circumstances to vary the rule just compensation is measured by the fair market value of the property. This is neither increased nor diminished by the fact that a mortgage has been executed on the property.

The jury awarded compensation in the sum of $18,-500 and by their verdict apportioned it as follows: To Fidelity Realty Company, owner in fee, $2,807.74; to Joseph F. Weber, mortgagee, $14,127.71; to Wayne

County Loan & Realty Company, $.06; to the city of Detroit for taxes, $1,443.71; to county of Wayne for taxes, $120.78. The court later made an order striking out the separate awards to appellants, "substituting therefor the sum of $16,935.45, making it a joint award as their interest may appear." We think this was error prejudicial to the rights of defendant Weber. The jury had fixed the compensation for the property taken; as matter of law, they had improperly apportioned it among defendants. Under these circumstances the error was one of law which the court by the terms of the act under which the proceedings were instituted could correct by amendment. But the amendment was also erroneous. There was due on the mortgage something over $25,000. The proceedings took from the mortgagee his entire security. It was not within the province of the court under these circumstances to award a part of the money to the mortgagor and a part to the mortgagee. *Long* v. *Kaiser*, 81 Mich. 518. Mr. Jones in his work on Mortgages says (2 Jones on Mortgages [7th Ed.], § 708):

"When the mortgaged property has been turned into money, or a claim for money in any way, as, for instance, by the taking of the property for public uses, or for the use of a corporation under authority of law, the rights of the mortgagee remain unaltered, and he is entitled to have the money in place of the land applied to the payment of his claim. Thus if a street be laid out through land subject to a mortgage, although the damages be assessed to the mortgagor, the mortgagee is entitled to them, as an equivalent for the land taken for the street."

See, also, *Dodge* v. *Railroad Co.*, 20 Neb. 276 (29 N. W. 936); *Sherwood* v. *City of LaFayette*, 109 Ind. 411 (10 N. E. 89); *In re Public Park*, 184 App. Div. 509 (172 N. Y. Supp. 50). The case must be reversed as to the defendant Weber with instructions to amend by awarding to him the full amount awarded to him and

to the realty company. We do not understand it to be questioned but that the taxes are a prior lien to the Weber mortgage. Defendant Weber will recover costs of this court. The city will recover costs from the realty company.

STEERE, C. J., and MOORE, STONE, CLARK, BIRD, and SHARPE, JJ., concurred.

The late Justice BROOKE took no part in this decision.